S10A0148. SANFORD v. THE STATE.
(695 SE2d 579)

HINES, Justice.

A jury found Otis Sanford guilty of malice murder, felony murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony in connection with the fatal shooting of Veronica Corbett. Following the denial of a new trial, Sanford appeals his convictions, claiming that the trial court erred in admitting into evidence certain out-of-court statements and in failing to properly ascertain whether he wished to exercise his right to testify, and that his trial counsel rendered ineffective

assistance. For the reasons that follow, we affirm.[1]

The facts construed in favor of the verdicts showed the following. On October 1, 2004, Corbett was at the home of Marhna Smith, who was the father of one of her children. Corbett lived with Sanford from time to time. That day Sanford went to Smith's home to talk to Corbett and to get his cell phone and keys from her. Smith took Sanford's things outside where Sanford could retrieve them. Corbett did not want to talk to Sanford, but he would not leave. After waiting for about ten minutes, Sanford entered the house and ran past Smith, chasing Corbett through the house and down some stairs. Sanford then fired two shots at Corbett, striking her. Smith ran from the house after he heard the gunshots, and returned when he saw Sanford leave. Officer Gerjets arrived on the scene and found Corbett with a gunshot wound to the chest, but still alive and conscious. She held a pillow to her abdomen and was in obvious pain. She told the officer that Sanford had gone down into the basement and shot her. Subsequently, Smith identified Sanford from a photographic lineup as the man at his house when Corbett was shot. Corbett died at the hospital several hours after the shooting as a result of the gunshot wound.

At trial, Officer Gerjets testified that at the crime scene Corbett told him that Sanford had shot her because they had been in a relationship and had broken up and she was "transitioning in a relationship with Smith." Sanford did not testify at the trial.

1. The evidence was sufficient to enable a rational trier of fact to find Sanford guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to the start of trial, the trial court held a hearing on Sanford's motion to exclude statements made by Corbett to Officer Gerjets that Sanford had shot her. The statements were made as Corbett was waiting for help from emergency responders, and the trial court ruled that the statements were admissible into evidence

---

[1] The crimes occurred on October 1, 2004. On July 1, 2005, a Fulton County grand jury indicted Sanford for malice murder, felony murder while in the commission of aggravated assault with a deadly weapon, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The possession of a firearm by a convicted felon count was dead docketed. Sanford was tried before a jury February 22-28, 2006, and found guilty of the remaining charges. On March 1, 2006, he was sentenced to life in prison for malice murder and a consecutive five years in prison for possession of a firearm during the commission of a felony. The trial court found the aggravated assault with a deadly weapon merged for the purpose of sentencing and the felony murder stood vacated by operation of law. A motion for new trial was filed on March 24, 2006, amended on March 20, 2009, and denied on July 17, 2009. A notice of appeal was filed on August 12, 2009, and the case was docketed in this Court on September 25, 2009. The appeal was submitted for decision on November 16, 2009.

as dying declarations and as part of the res gestae. Sanford contends that such ruling was error because the statements inculpating him did not qualify as dying declarations in that Corbett was not in the "article of death" when she made the statements, and, in fact, did not die until several hours later; he further argues that Corbett's statements were not admissible under the rationale of res gestae because they were made in response to police questioning, and that even if the statements qualify as either dying declarations or part of the res gestae, the analysis in *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), should be applied to find them inadmissible. However, the contentions are unavailing.

> One of the requirements for a statement to be admissible as a dying declaration is that the deceased must have been conscious of his condition. . . . OCGA § 24-3-6.[2] It need only appear to the court from the circumstances of the case that there was a probability that the deceased was conscious of his condition at the time he made the statement. . . . The testimony introduced as dying declarations need not contain any statement by the deceased to the effect that he was conscious of impending death at the time the declarations were made, since this may be inferred from the nature of the wounds and other circumstances.

*Morgan v. State*, 275 Ga. 222, 224 (5) (564 SE2d 192) (2002) (citations and punctuation omitted). Here, the circumstances amply demonstrate that Corbett was conscious of her critical condition at the time she made the statements inculpating Sanford as the shooter: it was apparent that her wounds were extremely serious; she was clutching a pillow to her abdomen to comfort her; her breathing was "stressed"; she was in great pain; and she appeared to be overwhelmed with fear. Moreover, recognizing the dire nature of her injuries, Corbett called 911 immediately after being shot and asked if she was going to die, and as the tape of the 911 call further established, Smith pleaded with her to "stay alive." These circumstances made a prima facie showing for the admission of the subject statements as Corbett's dying declarations. *Ventura v. State*, 284 Ga. 215, 217 (2) (663 SE2d 149) (2008). What is more, the statements were properly admitted under the res gestae exception to the hearsay rule, even though they may have been in response to queries by the

---

[2] OCGA § 24-3-6 provides:
  Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide.

officer; Corbett made the statements shortly after the shooting, in the midst of the chaos of the crime scene, and while awaiting emergency treatment. *Morgan v. State*, supra at 225 (5). See OCGA § 24-3-3.[3]

As to Sanford's urging that this Court should apply the analysis in *Crawford v. Washington*, supra, to find the statements inadmissible, this Court previously has acknowledged with approval that the Supreme Court of the United States has expressly declined to extend its analysis to dying declarations. *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004).

3. Sanford also contends that the trial court erred in overruling his objection to Officer Gerjets testifying that Corbett said that she thought that Sanford had shot her because they had been in a relationship that ended and she was going back to Smith. He argues that a dying declaration is limited to the cause of the person's death and the identity of the killer, and that testimony about the motive for the killing is not permitted. On the contrary, "dying declarations are admissible to prove any relevant fact embraced in the res gestae of the killing. . . . Conversations and conduct which are a part of the res gestae may be admitted as part of a dying declaration." *Strickland v. State*, 167 Ga. 452, 458 (4) (145 SE 879) (1928). Further, the admissibility of evidence as part of the res gestae is a matter within the discretion of the trial court. *Wright v. State*, 301 Ga. App. 178, 180 (1) (687 SE2d 195) (2009). Here, there was no abuse of the trial court's discretion in this regard. Id. As for any claim that the statement should have been barred under *Crawford v. Washington*, supra, only a statement that is testimonial will cause the declarant to be a witness for the purpose of the Confrontation Clause; a statement is nontestimonial, even when made during police interrogation, when the circumstances objectively indicate that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. *Glover v. State*, 285 Ga. 461, 462 (2) (678 SE2d 476) (2009). That is precisely the situation in this case. Officer Gerjets responded to the emergency situation, found the fatally wounded victim, and asked her what happened in order to assess the exigencies; also, he wanted to keep the victim talking in order to keep her from losing consciousness before emergency responders arrived. The Confrontation Clause is not implicated. Id.

4. Sanford maintains that the trial court erred in failing to

---

[3] OCGA § 24-3-3 provides:
   Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae.

properly ascertain whether he wanted to exercise his right to testify. He acknowledges that the trial court explained to him, outside the presence of the jury, that it was his decision whether to testify, but he claims that the trial court never got an on-the-record answer as to his wishes. But, the complaint is unavailing.

First, there is no requirement that the trial court have an on-the-record colloquy with a non-testifying defendant in order to inform the defendant of the right to testify and to obtain a knowing and intelligent waiver of that right. *State v. Nejad*, 286 Ga. 695, 696, n. 3 (690 SE2d 846) (2010), citing *Burton v. State*, 263 Ga. 725 (6) (438 SE2d 83) (1994). However, on the record is this colloquy among the trial court, Sanford, and defense counsel:

THE COURT: Mr. Sanford, in every case to every defendant I say exactly the same thing on the record. It has — I'm not singling you out in any way. You have the right to decide for yourself in this case whether you're going to take the witness stand.

SANFORD: Yes, ma'am.

THE COURT: You can get advice from your attorneys, but only you make that decision.

SANFORD: Yes, ma'am.

THE COURT: If you do testify, you can be cross-examined like any other witness, under Georgia law. If you choose not to testify, you'll get a charge from the court that says that no defendant is not — no defendant is required to testify, and if a defendant elects not to, as you would do in this case, if that's what you decide, and they can't hold that against you. Have you made a decision whether or not you want to take the stand or you are in the process of making that decision?

SANFORD: No.

THE COURT: Ms. Berry? Has your client decided? He doesn't have to answer me. He can answer through —

COUNSEL: Yes, he has decided, your honor, and no, he will not be testifying.

Sanford complains that the trial court accepted his attorney's assertion of Sanford's intentions, without asking him if that assertion was correct, even though Sanford's answer ''no'' could easily be interpreted to mean he had not yet made the decision about testifying. He argues that, consequently, his decision regarding his

right to testify was not made by him but by his attorney. However, the record supports the conclusion that Sanford's "no" response was in fact a negative response to taking the stand and not a response that he had instead reached no decision. Sanford was present and an active participant in the exchange regarding the decision about whether to testify, and had he not made a definitive decision to forego taking the stand, he could have spoken up and demanded his right to testify, but he remained silent in the face of his counsel's unequivocal statement that Sanford decided not to testify. *Blue v. State*, 275 Ga. App. 671, 676 (4) (621 SE2d 616) (2005).

5. Finally, Sanford contends that trial counsel rendered ineffective assistance in various respects. However, in order to prevail on his claim of ineffective assistance, Sanford has to demonstrate that his attorney's performance was deficient and that the deficiency prejudiced him so that there is a reasonable likelihood that, but for the attorney's errors, the outcome of his trial would have been different; in so doing, he must overcome the strong presumption that counsel's conduct fell within the broad range of reasonable professional conduct. *Smith v. State*, 282 Ga. 388 (651 SE2d 28) (2007), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). This Court gives deference to the trial court's factual findings, which are to be upheld unless clearly erroneous, and reviews the lower court's legal conclusions de novo. *Smith v. State*, supra at 388.

(a) Sanford first states that trial counsel was ineffective because she announced that she was ready for trial when she had not "discussed the evidence and trial strategy" with him nor "obtained crucial information" from him prior to trial; his complaint in this regard is that counsel did not present him, her "key defense witness" even though he "had told her that he wanted to testify but she refused to let him do so."[4]

At the motion for new trial hearing, trial counsel testified that she went to the jail to visit Sanford perhaps two or three times and then ceased to do so because Sanford refused to answer most of her questions, would not give her his version of events, would not help with his defense, and told her that he did not want to talk to her. The trial court was authorized to give credence to the attorney's testimony. *Lockheart v. State*, 284 Ga. 78, 81, n. 2 (663 SE2d 213) (2008). Thus, trial counsel can hardly be found to be deficient for not considering Sanford as a key witness in his own defense and for

---

[4] At trial, Sanford was represented by two deputy public defenders; however, his complaints appear to address only the attorney who testified at the motion for new trial hearing.

having to move forward with Sanford's defense without his cooperation. *Smith v. State*, supra at 388.

(b) Sanford next contends there was ineffectiveness on the part of his trial counsel because counsel "overrode" his "stated desire to testify." However, here again, he has failed to show a deficiency on the part of trial counsel. Trial counsel testified that she did not recall Sanford telling her that he wanted to testify, that the only time they talked about his testifying was when she was attempting to get his story about the shooting, and that Sanford responded along the lines of "you will find out what my story is when I get on the stand." Because of such statement, counsel commented to Sanford that she would not be putting him on the stand. Under these circumstances of Sanford's complete lack of cooperation with counsel and reckless disregard of his perilous situation, counsel cannot be adjudged deficient for determining as a matter of trial strategy that it was ill-advised for Sanford to testify at trial, and for counseling him not to do so. See *Head v. Ferrell*, 274 Ga. 399, 409 (V) (C) (1) (554 SE2d 155) (2001). Furthermore, the record supports the finding that Sanford himself ultimately made the decision not to testify. See Division 4, supra.

(c) Sanford urges that trial counsel was ineffective for failing to present certain of the victim's medical records obtained in discovery, which he contends would have bolstered his case by showing that the victim did not think that she was dying, and therefore, militating against admission of the victim's statements to Officer Gerjets as dying declarations. However, even assuming arguendo, that trial counsel was remiss for failure to use the cited medical records in the attempt to block admission of the victim's statements as dying declarations, Sanford cannot show any prejudice thereby. *Smith v. State*, supra. There was ample evidence to support the finding that the victim believed that she was in the article of death; moreover, the statements were also admissible under the res gestae exception to the hearsay rule. See Division 2, supra.

(d) Sanford's final assertion of ineffectiveness is that trial counsel failed to object and/or move for a mistrial when the assistant district attorney "opined" in closing argument that Sanford shot Corbett as she was running down the stairs even though the statement was factually insupportable as Corbett was shot in the chest. But, Sanford has far from demonstrated that any such statement by the prosecution was not a reasonable inference from the evidence, especially from Smith's trial testimony. Moreover, Sanford has not shown that but for such a lack of objection or moving for a mistrial, there is the reasonable probability that the outcome of his trial would have been different. *Smith v. State*, supra.

Simply, Sanford has failed to make a case for the ineffective assistance of trial counsel.

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 17, 2010 —
RECONSIDERATION DENIED JUNE 28, 2010.

*Charles H. Frier,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General,* for appellee.

