## S12A1371. DULCIO v. THE STATE.
## S12A1372. MORRISON v. THE STATE.
### (740 SE2d 574)

HINES, Justice.

Jeff Dulcio appeals his convictions for malice murder and possession of a firearm during the commission of a felony, and co-defendant Michelle Morrison appeals her convictions for felony murder while in the commission of aggravated assault and possession of a firearm during the commission of a felony, all in connection with the fatal shooting of Keith Brown. Dulcio challenges the sufficiency of the

---

evidence, and Morrison challenges the admission into evidence of certain testimony at trial; both claim that their respective trial attorneys were ineffective. For the reasons that follow, the challenges are without merit, and the convictions of both defendants are affirmed.[1]

The facts construed in favor of the verdicts showed the following. On the evening of June 11, 2007, Dulcio, Morrison, Rutledge, and Stephen Woods were together in Rutledge's hotel room. Rutledge, who ran an escort service, received a telephone call from Keith Brown, requesting the services of a prostitute. Rutledge had earlier been told by one of her prostitutes that Brown kept at least $40,000 in cash in his apartment, and Rutledge decided to send Morrison, one of her prostitutes, with Dulcio and Woods to Brown's apartment to rob Brown. Rutledge gave Dulcio a .380 caliber handgun, and Morrison drove Rutledge, Dulcio, and Woods to Brown's apartment complex. On their way, the four discussed how they would distribute the proceeds of the armed robbery.

Upon arrival, Woods was hesitant about robbing Brown, but Dulcio was "down to go with it" stating "f— this, man, I'm going to do what I got to do, and I ain't scared." Rutledge and Morrison remained in the vehicle. Dulcio, with the .380 caliber pistol and wearing latex gloves, approached the balcony of Brown's apartment with Woods

---

[1] The crimes occurred on June 12, 2007. On January 16, 2009, a Fulton County grand jury returned a ten-count indictment against Dulcio, Morrison, and Kisha Rutledge charging them as follows: Count 1 – Dulcio, Morrison, and Rutledge with malice murder; Count 2 – Dulcio, Morrison, and Rutledge with felony murder while in the commission of aggravated assault; Count 3 – Dulcio, Morrison, and Rutledge with aggravated assault with a deadly weapon; Count 4 – Dulcio, Morrison, and Rutledge with possession of a firearm during the commission of the felony of aggravated assault; Count 5 – Dulcio, Morrison, and Rutledge with felony murder while in the commission of criminal attempt to commit armed robbery; Count 6 – Dulcio, Morrison, and Rutledge with criminal attempt to commit armed robbery; Count 7 – Dulcio, Morrison, and Rutledge with felony murder while in the commission of conspiracy to commit armed robbery; Count 8 – Dulcio with conspiracy to commit a crime; Count 9 – Morrison with conspiracy to commit a crime; and Count 10 – Rutledge with conspiracy to commit a crime. Dulcio and Morrison were tried jointly before a jury April 6-14, 2009; at the time of trial, Rutledge had not been apprehended. Dulcio was found guilty of all charges, and Morrison was found guilty of all charges save for Count 1. Dulcio was sentenced to life in prison on Count 1, and a consecutive five years in prison on Count 4; Morrison was sentenced to life in prison on Count 2, and a consecutive five years in prison on Count 4. As to Dulcio, the verdicts on Counts 2, 5, and 7, stood vacated by operation of law, and the verdicts on Counts 3, 6, and 8, were found to merge for the purpose of sentencing. As to Morrison, the verdicts on Counts 3, 5, 6, 7, and 9, were found to merge for the purpose of sentencing. Dulcio, through trial counsel, filed a motion for new trial on April 22, 2009, and through new counsel, filed an amended motion for new trial on October 12, 2011. Morrison, through trial counsel, filed a motion for new trial on May 12, 2009, and through new counsel, filed amended motions for new trial on October 10, 2011, and January 10, 2012. Dulcio's motion for new trial, as amended, was denied on January 18, 2012. Morrison's motion for new trial, as amended, was denied on January 18, 2012. Dulcio filed a notice of appeal on February 15, 2012; Morrison filed a notice of appeal on February 17, 2012. Both cases were docketed in this Court's 2012 September term, and the appeals were consolidated for consideration and submitted for decision on the briefs.

following at a distance. Dulcio jumped onto the balcony and began firing into the apartment. Woods, who did not have a weapon, ran back towards the vehicle. Rutledge, Morrison, and Woods could not locate Dulcio, and after hearing sirens, fled the scene. On their way back to Rutledge's hotel room, Dulcio telephoned Rutledge and pleaded with her to pick him up. Dulcio stated, "I think I killed him." Rutledge telephoned another individual, Rick Shinault, who picked up Dulcio and brought him back to Rutledge's hotel room. Dulcio managed to elude the police and dispose of the handgun while waiting for his ride. Once back at Rutledge's hotel room, Dulcio bragged, "I killed him and then I seen him and I emptied the clip."

In the early morning hours of June 12, 2007, Brown's neighbor heard gunshots, and from his balcony saw a man generally fitting Dulcio's description walking very quickly towards the exit of the gated apartment complex. The neighbor was able to get a "clear view" of the man — he was wearing black clothing and a bandana and was carrying a handgun, and when this man saw the neighbor watching him, he attempted to hide his handgun. Around 11:00 p.m. on June 11, 2007, another neighbor of Brown's brought food to Brown's apartment, and Brown told him that a prostitute was coming over later that night. In the past, this neighbor had seen a prostitute at Brown's apartment, who generally fit Morrison's description, including that she was wearing a pink wig; during that encounter, Brown had given the prostitute the entrance code to the apartment complex.

Brown's body was found inside his apartment; the body was riddled with bullet holes. Brown had sustained five gunshot wounds; the fatal bullet entered his chest in the armpit area, passed through a lung, and exited through the center of his back. The wounds were consistent with those produced by projectiles from a .380 caliber handgun. The police found Brown's glass balcony door shattered, and the bushes around the balcony trampled. A white latex glove found in the parking lot of Brown's apartment complex bore Dulcio's DNA. Cell phone records linked Brown and Morrison and Woods and Dulcio.

1. Dulcio contends that the State's case was based upon hearsay and circumstantial evidence, which did not exclude every reasonable hypothesis but that of his guilt; therefore, the evidence was insufficient as a matter of law to convict him of any crime. But that is far from accurate.

As noted, the State's case was not based on hearsay or solely circumstantial evidence. There were, inter alia, multiple witnesses testifying as to Dulcio's direct involvement in Brown's murder; Dulcio's incriminating statements concerning his involvement; and found physical evidence placing Dulcio at the crime scene. In any

event, the relevant inquiry on appeal when the sufficiency of the evidence is challenged is whether the evidence, when it is viewed in a light most favorable to the verdict or verdicts, would authorize a rational trier of fact to find the appellant guilty beyond a reasonable doubt of the crime or crimes charged. *Nichols v. State*, 292 Ga. 290 (736 SE2d 407) (2013). Even accepting the premise that the evidence is solely circumstantial, in order to warrant a conviction the proved facts must be consistent with the hypothesis of guilt and exclude every other reasonable hypothesis save that of the guilt of the accused; generally, the reasonableness of hypotheses are for the jury to resolve. Id.

In this case, the evidence was sufficient to enable the jury to find both Dulcio and Morrison guilty beyond a reasonable doubt of the crimes of which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Morrison contends that the trial court committed reversible error when it denied her motion for mistrial after State's witness Shinault gave testimony that co-indictee Rutledge, who was a fugitive at the time of trial, allegedly told him that the murder was Morrison's fault.[2] She urges that the statements were hearsay and violative of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

Whether to grant a motion for a mistrial is within the sound discretion of the trial court, and this Court will not disturb the ruling on appeal unless it resulted from a manifest abuse of that discretion. *Curry v. State*, 291 Ga. 446, 452 (4) (729 SE2d 370) (2012). In this case, the trial court twice instructed the jury to strike the comments from its consideration and to disregard that portion of Shinault's testimony, and there was no abuse in failing to grant a mistrial.

---

[2] The following exchange occurred between the prosecutor and Shinault:
STATE: And, specifically, when you confronted Kisha Rutledge about the fact that she had involved you in picking up someone, who had just committed a murder, what did she say about that to you?
SHINAULT: She kind of laughed and said she was sorry.
STATE: And that was it?
SHINAULT: That was it.
STATE: Did she ever give you an explanation, well, this is what happened and this is how it went down and –
SHINAULT: She – some – I don't know. She said that there was an argument that happened. She didn't admit – she didn't give details much. She just said there was an argument. And, you know, now, this is key, I'm talking about. So I don't – I don't know. This is what she said. I don't know if it was true or what. But she – she said it was Michelle's fault. I said –

First, the statements did not constitute inadmissible hearsay. Pursuant to former OCGA § 24-3-5,[3] statements made by a co-conspirator during the pendency of the criminal project, including in the concealment phase, are admissible against all other co-conspirators. *Dyer v. State*, 287 Ga. 137, 141 (5) (695 SE2d 15) (2010). Here, there was evidence of the existence of an agreement among Rutledge, Dulcio, Morrison, and Woods to forcibly rob the victim, which triggered the events culminating in the victim's murder. The statements made by Rutledge plainly qualify as those made by a co-conspirator. Id.

As for an alleged violation of *Bruton* requiring the reversal of Morrison's convictions, the argument fails as well.

> In *Bruton*, the U. S. Supreme Court ruled that the admission of the confession of a non-testifying co-defendant inculpating the defendant deprived the defendant of the right to cross-examine witnesses, included in the Sixth Amendment right to confront witnesses, even when the admission of the co-defendant's statement was accompanied by an instruction limiting the jury's consideration of the confession to the case against the confessing co-defendant.

*Hanifa v. State*, 269 Ga. 797, 801 (2) (505 SE2d 731) (1998). But, *Bruton* prohibits only statements by a non-testifying co-defendant that directly inculpate the defendant; it is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence. *Moss v. State*, 275 Ga. 96, 99 (2) (561 SE2d 382) (2002). The meaning of Shinault's recounting of statements about Morrison is unclear; it is just as credibly interpreted as Rutledge saying that Morrison was responsible for an argument which ensued prior to the shooting. And the statements were non-testimonial. See *Colton v. State*, 292 Ga. 509 (739 SE2d 380) (2013). Even assuming arguendo, that the recounting of Rutledge's statements did constitute a *Bruton* violation, the statements echoed other evidence that was admitted at trial, and therefore, cannot provide a basis for reversal of Morrison's convictions. *Zackery v. State*, 286 Ga. 399, 402 (3) (688 SE2d 354) (2010).

3. Both Dulcio and Morrison contend that their separate trial attorneys were ineffective in numerous respects. However, in order to

---

[3] Former OCGA § 24-3-5 provided:
> After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all.

prevail on a claim of ineffective assistance of trial counsel, an appellant has to demonstrate that his or her attorney's performance was deficient, and that the deficiency caused such prejudice that there is a reasonable likelihood that, but for the attorney's error, the outcome at trial would have been different; in so doing, appellant must overcome the strong presumption that counsel's conduct fell within the range of reasonable professional conduct, which is broad. *Sanford v. State*, 287 Ga. 351, 356 (5) (695 SE2d 579) (2010), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In its review, this Court gives deference to the trial court's factual findings, which are to be upheld unless clearly erroneous, and examines the lower court's legal conclusions de novo. Id.

(a) Dulcio first contends that he suffered a constructive denial of counsel permitting him to rely on a presumption of prejudice because his trial counsel was unqualified to try his case in that counsel had handled only 10 to 15 criminal cases, had not tried a felony case, had only two misdemeanor trials which were bench trials, and defended the case without a second chair. He further maintains that his attorney, who "was appointed through the Public Defender Standards Council" would not have been appointed had the Council been aware of the attorney's lack of experience.

First, as Dulcio acknowledges, his trial attorney was initially selected and retained to represent Dulcio by Dulcio's own family. Furthermore, a constructive denial of counsel is not present unless counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing. The attorney's failure must be complete and must occur throughout the proceeding and not merely at specific points." (Citations and punctuation omitted.) *Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004).

The mere fact that the attorney may have been relatively inexperienced falls far short of demonstrating a complete failure of the adversarial process.[4] Indeed, "[e]very experienced criminal defense attorney once tried his first criminal case." *United States v. Cronic*, 466 U. S. 648, 665 (104 SC 2039, 80 LE2d 657) (1984). The fact that this was the attorney's first felony or criminal jury trial may shed light in an evaluation of the attorney's actual performance, but it does not justify a presumption of ineffectiveness of counsel. Id. And, as for the complaint about the lack of a second chair, the record reveals that

---

[4] In argument, Dulcio makes the passing comment that had a motion to suppress been filed in his case it would have been successful "given the lack of physical descriptions of the assailant by witnesses." But Dulcio does not even mention what he claims should have been suppressed much less how he was prejudiced thereby.

trial counsel consulted extensively with two other attorneys in preparation for defending Dulcio.

(b) Dulcio next claims that trial counsel rendered ineffective assistance because he did not make a hearsay objection to Woods testifying about certain statements made to him by Rutledge, thereby allowing the State to establish motive "without having to call the requisite witnesses."[5] But, even assuming that the cited portion of Woods's testimony contained hearsay, it would have been admissible under former OCGA § 24-3-3[6] or former OCGA § 24-3-5, which contained, respectively, the res gestae and co-conspirator exceptions to the admission of hearsay. Counsel's failure to make a meritless hearsay objection cannot be evidence of ineffective assistance of counsel. *Williams v. State*, 289 Ga. 672, 674 (2) (715 SE2d 76) (2011).

(c) Dulcio claims that counsel was ineffective for failing to object to testimony by Woods which he maintains was "pure speculation," in that Woods testified "through inadmissible hearsay" that Dulcio was present at the shooting and was the shooter.[7] But, here again Dulcio's complaint is unavailing. Woods's testimony was not speculative; it was what his impressions were during the fatal encounter. What is more, it was not inadmissible hearsay as it was part of the res gestae. See Division 3 (b), supra. Inasmuch as a hearsay objection would not have succeeded, the failure to make it cannot support a claim of counsel's ineffectiveness. See id.

(d) Dulcio contends that his trial counsel was ineffective for failing to procure a handwriting expert to rebut the State's evidence of certain incriminating "jailhouse" letters allegedly written by him to Woods.

Counsel testified that he contemplated hiring a handwriting expert for the letters, but after showing a letter to Dulcio and consulting with other attorneys, the strategic decision was made not

---

[5] Dulcio cites the following exchange:
STATE: After stopping at a Walmart but before getting to the apartment complex, what did Kisha Rutledge start saying about the customer and his money?
WOODS: That's when the subject switched, again, to where he got like 30, $40,000 in his house. I guess a prostitute went over there, something, found out about it, told her about it.

[6] Former OCGA § 24-3-3 provided:
Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae.

[7] The exchange in question was the following:
STATE: Now, where you were standing, could you tell if Mr. Dulcio opened the patio door or not?
WOODS: No. I don't think he opened it. I think he was firing before anybody even got a chance to open the door.

to do so; counsel's opinion was that such an expert would not have been helpful to Dulcio's defense in that it would not have shown that the letters were not written by Dulcio. Such a matter of trial strategy, if reasonable, cannot be the basis of a successful ineffective assistance of counsel claim. *Thomas v. State*, 284 Ga. 647, 650 (3) (b) (670 SE2d 421) (2008). And, under the circumstances of this case, it cannot be said that the decision to forego securing a handwriting expert to examine the letters was unreasonable. Id.

(e) Lastly, Dulcio urges that his trial counsel was ineffective for failing to object to a portion of one of the "jailhouse" letters to Woods which contained an ostensible reference to Dulcio masturbating, on the basis that it was improper character evidence.[8] But, even if the jury understood the reference as one to Dulcio's sexual behavior and accepting Dulcio's premise that such practice imputes bad character, he has failed to show that if this provision of the letter had been redacted, it would have had any impact on his trial much less that there is a reasonable probability that the result of his trial would have been different. *Sanford v. State*, supra at 356 (5); *Strickland v. Washington*, supra.

(f) Morrison contends that her trial attorneys[9] were ineffective for failing to adequately communicate to her a plea offer of five years to serve on a lesser charge in exchange for Morrison's testimony, in that "counsel applied the wrong facts to the legal rule and then misinformed his client."

In regard to the offer of a plea bargain, objective professional standards require that a defendant be told that such an offer has been made and to be advised of the consequences of the choices confronting the defendant. *Lloyd v. State*, 258 Ga. 645, 648 (2) (b) (373 SE2d 1) (1988). That is why,

> [i]n the context of a plea offer, trial counsel can be found to have rendered less than reasonably professional assistance if counsel has not informed his client that such a plea offer has been made and advised the client of the consequences of the choices confronting him.

---

[8] The exchange regarding that portion of the letter in question was the following:
STATE (reading from the letter): You could have your picture back, I went ham on that picture too many times. Fool with it.
STATE: What picture is he talking about?
WOODS: A female picture.

[9] Two attorneys represented her at trial.

*Brown v. State,* 291 Ga. 892, 898 (4) (734 SE2d 23) (2012). The record belies that such circumstances occurred in this case. Compare *Missouri v. Frye,* ___ U. S. ___ (132 SC 1399, 182 LE2d 379) (2012), and *Lafler v. Cooper,* ___ U. S. ___ (132 SC 1376, 182 LE2d 398) (2012).

At the motion-for-new-trial hearing, trial counsel testified that the plea offer was relayed to Morrison on numerous occasions, and that Morrison was urged to accept it. Even Morrison's family and the prosecutor spoke with Morrison about taking the plea. Despite these efforts, Morrison maintained her innocence and decided to proceed to trial. There is no indication that Morrison's attorneys misled her in any manner about the applicable law, her culpability, or the consequences of going to trial rather than entering into the plea bargain.

As to Morrison's related assertions that counsel was remiss for not further investigating her "laissez faire" attitude and alleged failure to grasp her situation, she produced no evidence that she was significantly impaired by drugs or otherwise during critical events surrounding the plea bargain offer. Morrison possessed a GED, and had attended technical college, and, even though counsel did not deem her to be "book smart," counsel was convinced that she was "street smart"; at times she appeared to be cavalier about the charges against her, but the evidence was that this was the result of her belief that she was not to blame for the victim's death. Morrison's testimony at her motion-for-new-trial hearing is telling: she recalled her counsel telling her about the plea offer of five years; she knew what a plea bargain was; she understood that she was charged with murder and related crimes and what sentences could be imposed; she was able to explain the crimes of felony murder and party to a crime; and while she maintained she was confused about the charge for which she would have entered a plea, she unquestionably knew that she would receive a sentence of only five years rather than the possible sentence of life in prison.

(g) Morrison next maintains that counsel was ineffective for not investigating her pre-trial statement to police and not adequately preparing her to testify at trial, resulting in her giving testimony damaging to her character.

First, Morrison does not specify how counsel's alleged lack of investigation of her pre-trial statement to law enforcement had any impact on her, much less resulted in harm to her. In any event, the record belies this claim of inadequate investigation. There was evidence at the motion-for-new-trial hearing that it was the custom and practice of counsel to review and investigate a client's pre-trial statements to law enforcement, and counsel was familiar with Morrison's pre-trial statement to police. In fact, the trial transcript reveals that during direct examination of Morrison, counsel was

aware of Morrison's pre-trial statement, and attempted to get her to explain why she had initially misled police.

As for preparing for trial, counsel testified that Morrison was prepared to testify "long before" trial began, and she ultimately decided to testify; prior to her testimony, the trial court instructed her that she had the right to testify but could not be compelled to do so. The trial transcript shows that her testimony was responsive and articulate. What is more, Morrison fails to show any prejudice from her asserted lack of preparation, and she cannot sustain her claim of ineffectiveness on the basis urged. *Sanford v. State*, supra at 356 (5); *Strickland v. Washington*, supra.

(h) Morrison contends that counsel should have made a second motion to sever her trial from Dulcio's,[10] arguing that there was a significant danger that the overwhelming evidence admissible in regard to Dulcio would be considered against her, and that Dulcio had a significant criminal history.

The trial court has broad discretion to grant or deny a motion for severance in a murder case where the death penalty is not sought, and in the exercise of that discretion, the trial court is to consider if the number of defendants would create confusion as to the law and evidence applicable to each, if there is the danger that evidence admissible against one defendant will be considered against the other despite the court's instructions, and if the defenses of the defendants are antagonistic to each other or to each other's rights. *McLean v. State*, 291 Ga. 873 (738 SE2d 267) (2012).

Morrison cannot establish prejudice in the failure to request severance, because she has not shown either that a motion should or would have been granted. The fact that evidence against a co-defendant is more substantial than against the movant for severance does not itself warrant severance. Although Morrison argues Dulcio had a "significant" criminal history, she fails to specify much less demonstrate how such alleged history was presented to the jury or impacted her trial in any manner. What is more, she fails to demonstrate antagonistic defenses, that evidence admissible only against Dulcio was improperly used against her, or that the joint trial created any confusion. Inasmuch as Morrison cannot show any of the factors relevant for severance, she cannot demonstrate that a renewed motion to sever would have been successful, and therefore, cannot establish a deficiency of counsel for not making the motion. *Sanford v. State*, supra at 356 (5); *Strickland v. Washington*, supra.

---

[10] Severance had been granted when Dulcio demanded a speedy trial, but the cases were again consolidated when the demand was withdrawn.

(i) Morrison next claims that trial counsel was deficient for not obtaining a psychological evaluation of her mental competency after allegedly realizing that she was not "grasping" the situation and saw that she fell asleep during jury selection.

The issue raised in a challenge of mental competency to stand trial is whether the defendant is capable of understanding the nature and object of the proceedings, comprehends her own condition with regard to such proceedings, and is capable of giving her counsel assistance with her defense. *Lindsey v. State*, 252 Ga. 493, 496 (314 SE2d 881) (1984). After multiple meetings and conversations, counsel had no reason to believe that Morrison was incompetent to stand trial or in need of a psychological evaluation to determine her mental capacity. And she offers no evidence that an evaluation would have shown anything negative about her mental competency or condition. As noted, the record reveals that Morrison had some formal education, was articulate in her trial testimony, and plainly understood the nature of the criminal proceedings, including being able to articulate to the trial court the meaning of certain criminal charges. Indeed, Morrison met the standard for competence to stand trial, and she cannot show ineffectiveness of counsel in failing to pursue a challenge based upon lack of mental competency.

(j) Morrison's final claim of trial counsel's ineffectiveness is that counsel failed to make a complete record of the grounds for a new trial and to make a motion for directed verdict, for fear of upsetting the trial judge, and consequently, abandoned counsel's obligations to her. But this claim is likewise unavailing.

First, counsel did move for a directed verdict on Morrison's behalf, which the trial court denied. If Morrison's present complaint is that counsel failed to renew the motion, it cannot succeed. Morrison was not entitled to directed verdicts of acquittal for the charged crimes inasmuch as there was legally sufficient evidence of her guilt to sustain her convictions. See Division 1, supra. The failure to renew a non-meritorious motion for directed verdict fails to provide a basis for claiming ineffective assistance of counsel. *Jimmerson v. State*, 289 Ga. 364, 369 (2) (d) (711 SE2d 660) (2011). And, even though Morrison intones the failure to complete the record, she specifies nothing that limited her ability to raise any issues on appeal.

Simply, both Morrison and Dulcio have failed to meet their burdens under *Strickland v. Washington*, supra.

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 25, 2013.

*Brandon Lewis*, for appellant (case no. S12A1371).

*Brenda J. Bernstein, Lauren E. Goodhart,* for appellant (case no.
S12A1372).

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn,
Paige Reese Whitaker, Assistant District Attorneys, Samuel S. Olens,
Attorney General, Paula K. Smith, Senior Assistant Attorney General,
Clint C. Malcolm, Assistant Attorney General,* for appellee.