In the Supreme Court of Georgia

Decided:   September 22, 2014

S14A0853.  WIGGINS v. THE STATE.

HINES, Presiding Justice.

Calvin Wiggins appeals the denial of his motion for new trial, as amended, and his convictions for felony murder while in the commission of aggravated assault and possession of a firearm during the commission of a felony in connection with the fatal shooting of Mahdi Thomas. Wiggins challenges the admission into evidence of statements by the victim as dying declarations and the effectiveness of his trial counsel.  Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. On September 22, 2007, Wiggins, who was known as "Weedi," and Thomas

[1]The crimes occurred on September 22, 2007.  On December 28, 2007, a Fulton County grand jury returned an indictment against Wiggins charging him with malice murder, felony murder while in the commission of aggravated assault, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony.  Wiggins was tried before a jury September 20- 24, 2010, and acquitted of malice murder but found guilty of the remaining charges. On September 30, 2010, he was sentenced to life in prison for the felony murder and a consecutive five years in prison for the firearm possession; the aggravated assault with a deadly weapon merged for the purpose of sentencing. A motion for new trial was filed on October 25, 2010, amended on July 6, 2012, and denied on March 13, 2013. A notice of appeal to the Court of Appeals was filed on April 11, 2013, and the appeal was transferred to this Court.  The case was docketed in this Court's 2014 April Term, and the appeal was submitted for decision on the briefs.

robbed a local drug dealer at gunpoint, taking up to five pounds of marijuana and $7,000 in cash. Thomas left taking the marijuana and money with him, while Wiggins stayed behind, keeping a handgun on the drug dealer. After a few minutes, Wiggins left, taking the drug dealer's cell phone and car.

That evening Thomas was to meet Wiggins at a gas station in Fulton County. Wiggins was not happy with his share of the proceeds from the armed robbery. At approximately 10:00 p.m., Thomas was in the driver's seat of his vehicle, which was stopped at one of the station's gas pumps. Wiggins and another man were in the vehicle with Thomas; Wiggins was sitting in the front passenger seat next to Thomas, and the other man had gotten into the back seat of Thomas's car after exiting a car parked nearby. The front seat passenger shot Thomas, exited the vehicle, and again fired the handgun he was wielding at the then fleeing Thomas. The back seat passenger moved from the rear of Thomas's car and rummaged through the front seat area, emerging with the stolen marijuana and cash. The shooter and the back seat passenger entered the car parked nearby and "peeled off" toward the highway.

Thomas sustained severe injuries from multiple gunshot wounds, and was transported to a hospital where he died following three surgical procedures in

2

an attempt to save his life.

1. Shortly after the first surgery, Thomas made two non-verbal statements - one to his brother and another to his wife- indicating that it was Wiggins who shot him.[2] Wiggins contends that the trial court erred in admitting evidence of the statements as an exception to hearsay testimony as the victim's dying declarations because the victim was not in the "article of death" at the time such statements were made.

Certainly, in order for a statement to be admissible as a dying declaration under former OCGA § 24-3-6,[3] the deceased must have been conscious of his condition; however, "it need only appear to the court from the circumstances of the case that there was a probability that the deceased was conscious of his

---

[2]Thomas's brother visited Thomas around 5:00 a.m. on September 23, 2007, and asked Thomas whether it was "Weedi" who shot him. Thomas could not speak because of the tubes in his mouth, but responded affirmatively by nodding his head. The brother then telephoned Thomas's wife and told her about the question and Thomas's response. Later that morning, between 8:00 a.m. and 9:00 a.m., Thomas's wife visited him. She first asked Thomas several questions to determine if he was coherent. She also observed that his eyes were normal, not dilated. In addition, Thomas's wife asked him to pray and ask God to forgive him for his sins. Thomas nodded his head. His wife then asked him, "Did Weedi shoot you?" Thomas nodded his head, "yes."

[3]Former OCGA § 24–3–6 provided:

> Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide.

condition at the time he made the statement." *Sanford v. State*, 287 Ga. 351, 353 (2) (695 SE2d 579) (2010). The testimony which is introduced as a dying declaration does not have to contain any statement by the deceased to the effect that he is conscious of his impending death at the time the declaration is made; this may be inferred from the nature of the wounds and other circumstances.  Id.

The circumstances in this case demonstrate that Thomas was conscious of his dire condition at the time he made the non-verbal statements inculpating Wiggins as the shooter: Thomas prayed with his wife for forgiveness; Thomas's intestines were shot like "swiss cheese"; he had a hole in his diaphragm; he had a gunshot wound that went through his liver; he had an injury to the vessel that drained his left kidney, causing it to die; he had holes in his colon and stomach; the first operation ended prematurely around 2:20 a.m. on September 23, 2007 because Thomas became very ill; his stomach was left open and his intestines were visible through  clear plastic tape; he was tied to the bed and had a chest tube in place;  although Thomas was on medication for pain, he was awake and alert after the first operation; and his mental status was evaluated as "11T," meaning he was following commands and able to make motions. However, after a second operation on September 24, 2007, Thomas developed a serious

4

infection that caused him to "swell up like a balloon"; his exposed intestines turned from pink to jet black. By the next day, September 25, 2007, Thomas was not responsive and had to breathe with the aid of a breathing machine. He died on September 26, 2007 due to multi-organ failure caused by the gunshot wounds to his chest and abdomen that led to sepsis.

These circumstances made a prima facie showing for the admission of the subject statements as Thomas's dying declarations. S*anford v. State*, 287 Ga. 351, 353 (2) (695 SE2d 579) (2010); *Ventura v. State*, 284 Ga. 215, 217 (2) (663 SE2d 149) (2008).

2. Wiggins contends that his trial counsel rendered ineffective assistance for not objecting to or having the State redact certain portions of his custodial interrogation on the basis that it was inadmissible hearsay in violation of the Sixth Amendment's Confrontation Clause. However, in order to prevail on such a claim, Wiggins must show both that his counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable. *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). While the test imposed by *Strickland* is not impossible to meet, the burden is a heavy one. *Mosley v. State*, 295 Ga.

123, 124 (2) (757 SE2d 828) (2014). What is more, this Court need not determine whether trial counsel's performance was deficient prior to examining whether there was the required prejudice suffered by the defendant resulting from the alleged deficient performance inasmuch as grading counsel's performance is not the object of an ineffectiveness claim. Id. Indeed, if it is expedient to dispose of an ineffectiveness claim on the basis of lack of sufficient prejudice, which is often the situation, that course should be followed. Id. This ineffectiveness challenge is such a case.

During trial, a redacted version of Wiggins's videotaped interview with the East Point police and a transcript of the interview were admitted into evidence, and the recorded interview was played for the jury. The redacted version of the interview contained statements by the interviewing police officers to the effect that numerous unnamed individuals had called and named Wiggins as Thomas's killer. Wiggins argues that his trial counsel was deficient in not objecting to the statements about anonymous callers as inadmissible hearsay, and that their exclusion would have changed the outcome at trial because he was subjected to trial based on rumors, the evidence bolstered the inculpatory testimony of Thomas's brother and wife, and the only other evidence

6

implicating him was the testimony of an eyewitness, who was never shown a photo lineup to identify Wiggins as the shooter.

However, Wiggins ignores his own inculpatory statements about having robbed a drug dealer, and being at the murder scene and in the front seat of the victim's car, which was the position seen occupied by the shooter. Wiggins's own statements coupled with the eyewitness account of the fatal shooting, the forensic evidence, and the death bed declarations of the victim naming Wiggins as his killer, constituted overwhelming evidence of Wiggins's guilt, thereby belying any claim of the reasonable probability that the outcome of Wiggins's trial would have been more favorable had trial counsel attempted to exclude the statements at issue. See *Lambert v. State*, 287 Ga. 774, 777 (2) (700 SE2d 354) (2010).

3. Although insufficiency of the evidence of Wiggins's guilt is not specifically enumerated as error, this Court has undertaken a review of the evidence, and finds that it is sufficient to enable a rational trier of fact to find Wiggins guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Judgments affirmed. All the Justices concur.