NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 12, 2025

S25A0541. RHODES v. THE STATE.

BETHEL, Justice.

A jury found Addonis Rhodes guilty of malice murder and other crimes in connection with the shooting death of Vernard Mays.[1]

---

[1] The crimes occurred on October 27, 2015. In April 2016, a Bibb County grand jury jointly indicted Rhodes, Jadarien Flowers, Michael Hardy, Jr., Drayson McDonald, and Curtis Jackson, Jr. for malice murder, two counts of felony murder, and violation of the Street Gang Terrorism and Prevention Act. Flowers, Hardy, and McDonald pleaded guilty before trial and testified against Rhodes and Jackson, pursuant to a plea agreement with the State. Rhodes and Jackson were tried jointly at a September 2018 jury trial and were found guilty of all charges. We previously affirmed Jackson's convictions. See *Jackson v. State*, 314 Ga. 751 (879 SE2d 410) (2022). The trial court sentenced Rhodes to serve life in prison for malice murder, and the remaining counts were vacated. The State has not appealed any sentencing errors, so we do not address any such errors here. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017) (when the State fails to cross-appeal a sentencing error that benefits the defendant, we will exercise our discretion to correct the error only under exceptional circumstances).

Thereafter, Rhodes filed a timely motion for new trial, which was amended through new counsel. Following a hearing, the trial court denied Rhodes's amended motion on November 25, 2024. Rhodes filed a timely notice of appeal, and the case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

Following the denial of his motion for new trial, Rhodes appeals, arguing that the trial court erred by denying his motion to suppress and that trial counsel was ineffective in several ways. Rhodes's claims fail, so we affirm.

The evidence at trial showed that Rhodes and co-indictee Drayson McDonald were members of the "10-12" street gang, a "hybrid gang"[2] associated with the Crips street gang and that Rhodes was known to be an "enforcer" — that is, he provided security — for 10-12. Co-indictees Jadarien Flowers, Curtis Jackson, Jr., and Michael Hardy, Jr. were members of the Crips.

On the night of the crimes, Rhodes and his co-indictees traveled to the home of Mays's mother in search of a missing gun that had been stashed in shrubbery outside the residence earlier that day. The gun belonged to another member of the Crips and,

---

[2] According to the gang expert who testified at trial, a "hybrid gang" is a street gang that begins as "a youth-based group that's started by the youth" and originates "from a younger generation, as young as kids in middle school, nine, 10 years old coming up with their clique and making up their own rules as they go." Members of hybrid gangs may also be members of other street gangs while maintaining membership in the hybrid gang.

unbeknownst to Rhodes and the others, had been retrieved by a third party earlier that day. On the mistaken belief that an occupant of the home had pilfered the gun, Rhodes and his co-indictees armed themselves with guns of their own and knocked on the back door of the residence, intent on confronting the occupants about the lost weapon. Mays answered the door.

Jackson asked Mays about the missing gun, but Mays indicated that the residents of the home did not have the gun and that he did not know what Jackson was talking about. As Jackson turned to walk away from Mays, Jackson reportedly gave Rhodes a "look," which Rhodes understood to be an indication to shoot. Rhodes then fired his gun at Mays, and Flowers, Hardy, and McDonald, who also were armed, followed suit. Hardy, Flowers, McDonald, and Rhodes then ran back to their vehicle, leaving Jackson at the scene. In the vehicle, Rhodes indicated that he had "unloaded his whole clip" and "knew he hit [Mays]." Mays died from a single gunshot wound to his leg.

In the days following the shooting, Rhodes and Flowers devised a plan to kill Jackson at a party because they believed he was trying to deny any involvement in the shooting and was instead pointing the blame at the others. Armed with a gun, Rhodes lay in wait for Jackson outside the party, but his assassination effort was thwarted when an acquaintance spotted Rhodes and called out his name.

1. In his first claim of error, Rhodes asserts that the trial court abused its discretion by denying his oral pretrial motion to suppress a post made on his Facebook page "within a few days after" Mays's murder.[3] In the post, Rhodes announced, among other things, that he worshiped "the devil" and that "Lucifer . . . understands why I kill" and "why I rob." Rhodes argued that the post constituted improper evidence of his character that was "more prejudicial than probative." The trial court disagreed and denied Rhodes's motion, and the post was subsequently admitted into evidence at trial. Now, on appeal, Rhodes asserts that this was error. Focusing on the

---

[3] Although Mays's mother was unable to recall the precise date on which the post was made, the parties agreed that it was made within "a few days" of Mays's murder.

portions of the post in which he references his devotion to "the devil" and "Lucifer," Rhodes contends that the post was "highly prejudicial illegal character evidence" and, as such, was inadmissible. We disagree.

Though Rhodes has not cited any specific rule of evidence in support of his assertion that the Facebook post was improperly admitted, we understand his characterization of the post as "highly prejudicial" to be a reference to OCGA § 24-4-403 ("Rule 403"). See *Bannister v. State*, 306 Ga. 289, 300 (830 SE2d 79) (2019) (analyzing under Rule 403 argument that appellant's statement was "extremely prejudicial," although appellant did not specifically cite the rule). Under Rule 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

> We have explained that there is no mechanical solution for this balancing test, and that in each case, a trial court must undertake a considered evaluation of the proffered justification for the admission of such evidence and make an independent determination of whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. In reviewing issues under Rule

5

403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact. Decisions regarding relevance are committed to the sound discretion of the trial court, and the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly.

*Thomas v. State*, 310 Ga. 579, 582-583 (3) (853 SE2d 111) (2020) (citations and punctuation omitted).

In the Facebook post, Rhodes declared that "Lucifer . . . understands why I kill," implicitly acknowledging that he had previously killed someone. Coupling that acknowledgment with the fact that the post was made within days of Mays's murder, the post was relevant and probative of Rhodes's guilt because he was charged with murder and admitted only days after the murder that he in fact had killed someone. And despite the lack of detail in the Facebook post specifically connecting Rhodes's statements to Mays's murder, which Rhodes complains of on appeal, given the timing of the post, it is relevant and probative to support the State's theory that Rhodes was referring to Mays's murder. See *Early v. State*, 313 Ga. 667, 671 (2) (b) (872 SE2d 705) (2022) (appellant's statement, "I'm a

6

murderer," "was highly probative because he was charged with murder and the statement indicated that after the shooting, he asserted to a law enforcement officer that he had murdered someone, although at trial he maintained that he shot [the victim] in self-defense"); *Bannister*, 306 Ga. at 300 (evidence that appellant said during a recorded jail call, "I know I f**ked up. It's all messed up," was probative of guilt "because it indicated that after the shooting [of the victim, appellant] believed he had done something wrong").

As to the asserted unfair prejudice arising from the references to Satanic worship contained in the post, "the question before us is not whether [the evidence at issue] was prejudicial, but rather whether the danger of unfair prejudice substantially outweighed the probative value of [the evidence]." *Smith v. State*, 302 Ga. 717, 724 (3) (808 SE2d 661) (2017). Although it is possible that the Satanic references in the post cast Rhodes in a prejudicial light in the minds of some jurors, "[t]hese words alone were unlikely to induce the jury to return a conviction based on a generalized assessment of

7

character." Id. The State's references to "the devil" and "Lucifer" during the trial were brief and minor. First, Mays's mother, who located the Facebook post and brought it to investigators' attention, read aloud the post in its entirety; she was not questioned any further about the Satanic references. Second, during closing argument, the prosecutor briefly invoked the portion of the post announcing that "Lucifer" knows why Rhodes "kills," but the prosecutor's focus was on Rhodes's admission to having killed someone, rather than any implications arising from the Satanic references. And finally, the trial court instructed the jurors that, in deciding the case, they were not to be "influenced by sympathy or prejudice because of . . . religion . . . for or against either party. You are only concerned with the guilt or innocence of the defendant." And it is well settled that "qualified jurors are presumed to follow trial court instructions." *Robinson v. State*, 308 Ga. 543, 552 (2) (b) (ii) (842 SE2d 54) (2020). Given these circumstances, we cannot say that the trial court abused its discretion in determining that the probative value of the inculpatory statements was not substantially

8

outweighed by the danger of unfair prejudice and therefore denying Rhodes's motion to exclude the Facebook post under Rule 403. Accordingly, this claim fails.

2. Rhodes next asserts that trial counsel rendered constitutionally ineffective assistance in three ways: (1) by failing to move to suppress gang evidence and by failing to request a bifurcated trial on the basis of that same evidence; (2) by failing to move to suppress testimony that Rhodes had planned to kill Jackson; and (3) by failing to convey a plea offer. To prevail on a claim of ineffective assistance, an appellant bears the burden of showing both that trial counsel's performance was professionally deficient and that he was prejudiced as a result of that deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To show deficient performance, an appellant "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment." *Lockhart v. State*, 298 Ga. 384,

9

385 (2) (782 SE2d 245) (2016) (citation and punctuation omitted). And to show prejudice, an appellant "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Simpson v. State*, 298 Ga. 314, 318 (4) (781 SE2d 762) (2016) (citation and punctuation omitted). Rhodes has not met his burden.

(a) Rhodes first argues that trial counsel was deficient by failing to move to exclude testimony regarding his gang membership.[4] Rhodes also argues that because the gang evidence was inadmissible against him but was admissible against Jackson,

---

[4] In connection with this enumeration, Rhodes also argues that the evidence that 10-12 meets the definition of "criminal street gang" (as opposed to a "clique") was conflicting and that there was no evidence that the shooting was done in furtherance of a gang. But Rhodes has not enumerated as error any challenge to the sufficiency of the evidence supporting the Street Gang Act count. See *Felix v. State*, 271 Ga. 534, 539 n.6 (523 SE2d 1) (1999) ("an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of errors"). And in any event, the trial court vacated the count alleging a violation of the Street Gang Act, so Rhodes was not sentenced on that count. Thus, to the extent Rhodes seeks to challenge the sufficiency of the evidence supporting the jury's guilty verdict on the Street Gang Act count, his argument is moot. See *Milton v. State*, 318 Ga. 737, 742 (2) n.5 (900 SE2d 590) (2024) (because appellant was not sentenced for charges that were vacated or merged, sufficiency claims related to those crimes were moot).

10

counsel should have sought to bifurcate his trial from Jackson's. In advancing this claim, Rhodes does not identify any specific ground for excluding the evidence, but we interpret his characterization of the evidence as "highly prejudicial" as an assertion that it should have been excluded under Rule 403. We are not persuaded.

It is well settled that, under OCGA § 24-4-402, "[a]ll relevant evidence shall be admissible." And to evaluate relevance, we look to OCGA § 24-4-401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence may be excluded under Rule 403, however, "if its probative value is substantially outweighed by the danger of unfair prejudice," among other considerations. But the exclusion of evidence under Rule 403 is an "extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility." *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017) (citation omitted). And "[w]hile gang evidence may be prejudicial, it is only

11

when *unfair* prejudice substantially outweighs probative value that Rule 403 permits exclusion." *Butler v. State*, 310 Ga. 892, 898 (2) (855 SE2d 551) (citation and punctuation omitted; emphasis in original).

Here, Rhodes was charged with violating the Georgia Street Gang Terrorism and Prevention Act. See OCGA § 16-15-4. And the gang evidence was not just highly probative but indeed necessary to prove several of the essential elements of the Street Gang Act offense — that Rhodes was associated with the gang and that the crimes were committed to further the gang's interests. See *Butler*, 310 Ga. at 898-899 (2). See also *Dixon v. State*, 309 Ga. 28, 33 (1) (b) (843 SE2d 806) (2020) (citation omitted) (identifying essential elements of a Street Gang Act violation). The mere fact that the evidence may have been "highly prejudicial," as Rhodes asserts, does not, standing alone, establish that a motion to exclude the evidence would have succeeded. Indeed, "in a criminal trial, inculpatory evidence is inherently prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that [Rule 403] permits

exclusion." *Anglin*, 302 Ga. at 337 (3) (citation and punctuation omitted; emphasis in original). And Rhodes has not attempted to show that the significant probative value of the gang evidence was substantially outweighed by any unfair prejudice, so he has failed to carry his burden of showing that a motion to exclude on this basis would have succeeded. See *Jenkins v. State*, 313 Ga. 81, 90 (3) (868 SE2d 205) (2022) (noting that "the party seeking to exclude the evidence must show that the probative value of the relevant evidence is substantially outweighed by the danger of unfair prejudice" (citation and punctuation omitted)).

Moreover, Rhodes likewise cannot show that a motion to bifurcate his trial from Jackson's on the basis that the gang evidence was not applicable to his case and was otherwise prejudicial would have succeeded. As we just explained, evidence of Rhodes's gang affiliation was relevant and admissible to the charges against him under the Street Gang Act. And, with respect to the other charges against him, the gang evidence provided context and motive for the shooting. See *Bullard v. State*, 307 Ga. 482, 490 (3) (837 SE2d 348)

13

(2019). Accordingly, Rhodes would not have been entitled to a bifurcation of his trial on these grounds. See id.

For these reasons, Rhodes' claims that defense counsel was deficient for failing to file meritless motions fail. See *Hampton v. State*, 295 Ga. 665, 670 (2) (763 SE2d 467) (2014) ("[T]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel.").

(b) Rhodes next contends that trial counsel performed deficiently by failing to move to exclude testimony regarding his plot and attempt to kill Jackson. As with his first claim of ineffective assistance, Rhodes merely asserts that exclusion was warranted because the evidence was "highly prejudicial," which we again understand to be a reference to Rule 403. But evidence that Rhodes tried to kill his accomplice with the ultimate goal of concealing his part in Mays's murder was highly probative of guilt. And "whatever unfair prejudice may have arisen from it did not substantially outweigh the high probative value." *Jackson v. State*, 317 Ga. 95, 101-102 (2) (a) (891 SE2d 866) (2023) (testimony that defendant

14

used threat of force to dissociate his name from the victim's murder and to conceal his involvement "was obviously probative of his guilt" and was not outweighed by unfair prejudice); see also *Richardson v. State*, 308 Ga. 70, 72 (3) (838 SE2d 759) (2020) (appellant's "attempt to conceal his involvement in the crimes was evidence of his guilt"). Accordingly, any motion to exclude this evidence would have been meritless, and trial counsel did not perform deficiently by failing to file a meritless motion. See *Jackson*, 317 Ga. at 102 (2) (a).

(c) Finally, Rhodes asserts that trial counsel was deficient for failing to convey to him a plea offer from the State. Again, we disagree.

As a general matter, "objective professional standards" require trial counsel to inform a defendant if a plea offer has been extended and to advise the defendant "of the consequences of the choices confronting [him]." *Dulcio v. State*, 292 Ga. 645, 652 (3) (f) (740 SE2d 574) (2013). In this case, the trial court found that trial counsel was not ineffective because Rhodes failed to present any evidence that the State had actually extended a plea offer. In reaching this

conclusion, the trial court relied on testimony by Rhodes's trial counsel, the only witness to testify at the motion for new trial hearing, who stated he had no recollection of a plea offer being made. The trial court also credited trial counsel's testimony that it was his general practice to convey written and verbal plea offers to defendants and that, had one been made here, he would have conveyed it to Rhodes. Giving proper deference to the trial court's factual findings and credibility determinations — which Rhodes does not challenge on appeal — we agree that Rhodes has failed to establish that a plea offer had been extended and, thus, has not carried his burden of establishing that trial counsel performed deficiently. See *Lewis v. State*, 312 Ga. 573, 546-547 (3) (b) (863 SE2d 65) (2021) ("The trial court was authorized to credit the testimony of appellant's trial counsel, and its factual findings and credibility determinations will be accepted unless clearly erroneous." (citation and punctuation omitted)); *Morrison v. State*, 303 Ga. 120, 126 (5) (c) (810 SE2d 508) (2018) (no deficient performance where appellant failed to show that he was offered a plea that counsel declined). His

ineffective assistance claim therefore fails.

*Judgment affirmed. All the Justices concur, except Land, J., not participating.*