**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 3, 2012**

# In the Court of Appeals of Georgia

A12A0976. FISHER v. THE STATE
A12A0977. LYNCH v. THE STATE.
A12A0978. JADOORAM v. THE STATE.

ANDREWS, Judge.

Niko Fisher, Bryant Lynch and Shammi Jadooram appeal after a jury found them guilty of numerous charges, including armed robbery, aggravated assault, false imprisonment, kidnapping, theft by taking and possession of a firearm during the commission of a crime. After reviewing the records we find no error and affirm.

The evidence at trial, taken in the light most favorable to the verdict, was that there were two armed robberies of convenience stores that occurred within 12 hours of each other. The participants in the first robbery were Lataliyia Ford, Mark Scott,

T. J. Baugh, and Aleakeem Petersen. The participants in the second robbery were Ford, Petersen, Jadooram, Niko Fisher and his brother Jomandi.[1]

The first robbery occurred when Petersen, armed with a gun, and Scott went into the Get N Fly convenience store while Ford and Baugh drove the car down the street to wait for them. After the robbery, Ford and Baugh picked up Scott and Petersen and drove to Ford's house.

At some point, Scott and Baugh left the house and Jadooram, Lynch, Niko Fisher and Jomandi Fisher arrived. According to Ford, they began shooting dice and decided to go get "some more money." Ford, Jadooram, Lynch, Niko Fisher, Jomandi Fisher and Petersen went to Jadooram's house. Jadooram and Petersen went inside and came back with guns.

Ford and Jomandi Fisher stayed in the car while Petersen, Niko Fisher, Jadooram and Lynch went to the Kangaroo convenience store. David Padgett, one of the victims, noticed the four men behind the store, all dressed in black, as he went into the store. Padgett told the cashier Reba Knox about the men and Knox, Padgett, and Michael Hammack, a customer, went outside to see what was happening. The

---

[1] These seven were the original defendants in the case. Scott's motion to sever was granted and Ford and Jomandi Fisher pled guilty. Of the four that went to trial, Lynch, Jadooram, and Niko Fisher have appealed in these consolidated cases.

four men came up to Knox, Padgett and Hammack and forced them back into the store at gunpoint. They forced Padgett and Hammack to the floor, then took Hammack into a back room and stole his wallet. They told Knox to open the cash register. As she was trying to do so, she heard a gunshot and saw Padgett fall to the floor. Knox said that the man who shot Padgett came over to stand beside her, said "y'all think I'm playing with y'all?" and then fired the gun, grazing her neck. Three of the men took money out of the register and then all four left, taking Knox with them. The men forced Knox to get into Hammack's car and drove away. They pulled into some apartments, let Knox go, left Hammack's car, and got into the black Cadillac that Ford was driving. Jomandi Fisher testified that when he and Ford picked up Lynch, Jadooram, and Niko Fisher after the robbery, Lynch told them that Jadooram was the one who shot the victim.

Padgett testified at trial and said that he was shot before the men left the store with Knox. He stated that he crawled to the back of the store where the robbers had left Hammack and told Hammack that the men had gone. Padgett said that he suffered a gunshot wound to his spine, causing permanent paralysis.

The State presented evidence that the defendants stole a black bag from the Volvo belonging to Hammack; and also played a store surveillance tape for the jury

3

There was testimony that officers found ski masks, black stockings, and a .38 revolver in a bag hidden under a shed next to Jadooram's house.

Niko Fisher was the only one of the defendants to testify at trial. He stated that although at first he went along with the decision to commit the robbery, he did not want to go through with it after they arrived at the Kangaroo store. Fisher said that Jadooram handed him a gun and when Fisher told him that he did not want to do it, Jadooram pointed a gun at him and told him to "go." Fisher said he went in the store because he was afraid of Jadooram. Fisher testified that it was Jadooram who shot Padgett. Fisher admitted grabbing money from the cash register but said that Jadooram told him to do it. Fisher said Jadooram fired the gun at Knox and claimed that he was not part of the decision to take Knox with them when they left the store.

Although not enumerated as error, the evidence, as set out above, was sufficient for a rational trier of fact to find appellants guilty beyond a reasonable doubt of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Case Number A12A0976

1. In this case, Niko Fisher argues that he did not receive a full panel of qualified jurors at which to direct his peremptory strikes. He contends that the trial

4

court erred in not granting appellants' motions to excuse jurors Hughes and Franklin for cause.

The transcript shows that following voir dire of the first panel, all three defense counsel moved to have jurors Donehoo, Franklin and Hughes removed for cause. Donehoo stated that his aunt worked with Padgett's aunt; he had heard the case being discussed; and, he had also read about the case in the newspaper. Franklin stated that he had followed the case in the news and had been threatened at his place of business by someone who said he was going to kill him. When asked if he would have difficulty deciding this case because of that incident, Franklin responded, "A little bit." Juror Hughes said that she worked with Padgett's aunt and she wasn't sure that she could be impartial.

The court then questioned those three jurors outside the presence of the panel. The court questioned juror Donehoo first. The judge asked him if he could make a decision based on the law and the facts in the case. Donehoo replied "I've already kind of got my mind made up." The judge pointed out that a juror's duty was to listen and determine whether the State met its burden of proving that the defendants were responsible for the injury. Donehoo replied, "in my head, they're already guilty." The judge excused Donehoo; but lectured him on his duties as a citizen.

The judge then talked to juror Hughes and asked her if she could weigh the evidence and make a decision based upon the evidence and the law. Hughes replied, "I think I could." The judge asked juror Franklin the same question and he replied that he could be fair and that he could carry out his duty as a juror to weigh the evidence and not show favoritism.

"[T]he burden of proving partiality lies with the party seeking to have the juror disqualified." *Hollis v. State*, 269 Ga. App. 159 (603 SE2d 516) (2004). "The decision to strike a potential juror for cause lies within the sound discretion of the trial court, and before a potential juror is so excused, it must be shown that the individual holds an opinion of the defendant's guilt or innocence that is so fixed and definite that the individual will not be able to set the opinion aside and decide the case based upon the evidence and the court's instructions." *Higginbotham v. State*, 287 Ga. 187, 191 (695 SE2d 210) (2010). "A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference." *Cade v. State*, 289 Ga. 805, 807 (716 SE2d 196) (2011).

In this case, although appellants claim that Hughes and Franklin were intimidated by the trial court's reprimand of juror Donehoo, there is no evidence of

that. As appellants acknowledge, there was no "browbeating" of jurors Hughes and Franklin, see *Doss v. State*, 264 Ga App 205, 210-211 (590 SE2d 208) (2003), nor is there anything in the record showing that Hughes or Franklin had a compelling bias or interest in the outcome of the case. See *McClain v. State*, 267 Ga 378, 380-381 (477 SE2d 814) (1996). See also *Higginbotham*, supra (juror did not meet the qualification for dismissal for cause, merely because he knew the father of the victim); *Cade*, supra (juror stated that she had struggled a little with the question of impartiality); *Patterson v. State*, 233 Ga. App. 776, 777 (505 SE2d 518) (1998) ("The fact that a potential juror may have some doubt about her impartiality or complete freedom from all bias does not demand as a matter of law that the juror be excused for cause").

Accordingly, because the record does not show that Hughes's and Franklin's opinions were so fixed and definite that they could not be changed by the evidence and the charge of the court upon the law, we cannot say that the trial court abused its discretion in declining to strike these jurors for cause. See *Patterson*, supra.

2. Next, Fisher argues that the trial court improperly limited voir dire. The transcript shows that defense counsel were still questioning the first panel after an hour and ten minutes had elapsed. The trial court stated: "Every one of you deserves

to have a right to ask pertinent questions that you want to ask the jury panel, but you need to ask questions one time." "[S]ome of them [questions] you have to ask again, I understand, but . . . ask whatever pertinent question you need to ask, but you do not need to ask the question that has already been asked this panel just for the sake of saying something to this jury." Appellants complain that because of these instructions, trial counsel did not follow up or return to the questioning of jurors Donehoo, Hughes, or Franklin.

There was nothing improper in the trial court's instruction to defense counsel and defense counsel were not prevented from asking any questions they chose; the trial court merely stated that counsel were not to ask the same questions that had already been asked and answered. Fisher cites *Lane v. State*, 126 Ga. App. 375 (190 SE2d 576) (1972) as authority for his claim of error, but that case does not support his argument. In *Lane*, the trial court told counsel he would permit counsel to ask the juror only two more questions. Further, in that case, there was no suggestion that the examination had been too lengthy or drawn out. Id. at 377.

That is not the case here. The court did not limit the number of questions counsel could ask nor did it curtail further inquiry.

3. Fisher next argues that the prosecutor made an improper "golden rule" argument. The record shows that during closing argument, the prosecutor described what the victims Hammack, Padgett and Knox must have felt during the robbery, the shooting and the kidnapping. The prosecutor then stated: "what we can do is make sure that the people, each and every one of them that participated in that, are responsible for what happened because let me tell you[,] that could have been you, that could have been me, and that could have been our children that walked into that store."

Defense counsel objected and moved for a mistrial. The trial court denied the motion for mistrial but gave curative instructions as follows: "During the State's closing argument, Ms. Heidmann made reference to these events that have occurred allegedly in this indictment and that it could have affected her or yourselves or your children. That is an improper argument under the law. You are not to place yourself, your family, or any other person in the place of the actual victims in this case, and you should not consider that in your deliberations. Your concern here is to decide whether or not the State has proven the guilt of these defendants beyond a reasonable doubt and not to make a decision based upon sympathy or any reference to yourselves. It is

9

totally improper for a juror to put themselves in the place of the victim or a named victim in a case."

"A prohibited "golden rule" argument is one which, either directly or by implication, tells the jurors that they should place themselves in the position of the victim in rendering a verdict." *Carpenter v. State*, 285 Ga. App. 296, 298 (645 SE2d 709) (2007). "Whether to grant a mistrial for improper argument is a matter within the discretion of the trial court, and even when an objection to improper argument is sustained but a mistrial is denied, other action, including the giving of curative instructions, is not mandatory." *Emmanuel v. State*, 300 Ga. App. 378, 381 (685 SE2d 361) (2009). Here, the trial court did give curative instructions; therefore, we cannot say that the trial court abused its discretion in denying the motion for mistrial. See *Brown v. State*, 260 Ga. App. 77, 82-83 (579 SE2d 87) (2003) (in view of curative instructions given after prosecutor's "golden rule" argument, there was no abuse of discretion in trial court's denial of motion for mistrial).

4. Fisher argues that the trial court erred in denying his motion to sever his case from that of the other defendants. Fisher contends that he did not participate in the first robbery at the Get N Fly store which gave rise to the charges in Counts 18, 19,

and 20, and therefore he was harmed because of the confusion and prejudice resulting from evidence of that robbery. We disagree.

"It is not an abuse of discretion in the interest of justice for the judge to refuse a motion for severance of the trial of multiple charges where the crimes alleged were part of a continuous transaction conducted over a relatively short time, and from the nature of the entire transaction, it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of the other." *Stewart v. State,* 239 Ga. 588, 589 (238 SE2d 540) (1977)." See also *Padgett v. State*, 239 Ga. 556, 558 (238 SE2d 92) (1977) (although acting individually, defendants had a single criminal purpose, which was to engage in the business of prostitution).

Further, the burden is on appellant to show prejudice and he "must do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." *Owen v. State*, 266 Ga. 312, 314 (467 SE2d 325) (1996). Fisher has made no clear showing of prejudice, either below or on appeal. This enumeration of error is without merit.

5. Fisher also argues that the trial court erred in recharging the jury outside of his presence. The record shows that the trial judge was summoned to the jury room

11

because the jurors' discussion was becoming hostile and tempers were flaring. The judge repeated that portion of the charge stating that each juror must decide the case for themselves after a thorough consideration of the evidence and deliberation with their fellow jurors. The court then reminded the jurors that any further communication must be in writing. The court called the lawyers and their clients back to the courtroom, described what happened, and offered to restate the instruction in open court. All of the lawyers stated that it was not necessary to recharge the jury, none of the lawyers requested a mistrial nor did anyone object or request further action of any kind.

This issue was not preserved for appeal. Within the Georgia constitutional right to the courts is a criminal defendant's "right to be *present,* and see and hear, *all the proceedings* which are had against him on the trial before the Court." *Wade v. State of Ga.,* 12 Ga. 25, 29 (1852). See *Martin v. State of Ga.,* 51 Ga. 567, 568 (1874). "A colloquy between the trial judge and the jury is a part of the proceedings to which the defendant and counsel are entitled to be present." *Hanifa v. State*, 269 Ga. 797, 807 (505 SE2d 731) (1998). However, "[defendants] waived [their] right to appellate review of this issue by failing to voice an objection or seek a mistrial after being

informed by the trial judge, prior to the return of the jury's verdicts, of his visit with the jury." Id at 807.

Case Number A12A0977

1. In this case, Bryant Lynch contends that the trial court erred in not excusing jurors Hughes and Franklin for cause. This claim has already been addressed in Division 1 of Case Number A12A0976.

2. Next, Lynch argues that the trial court erred in denying his challenge to the array of the jury panels. The record shows that after the third panel of jurors was brought into the courtroom, counsel challenged the array of the jurors, stating that "there were only four black jurors brought up before this panel, . . . and none of them were of the age group or the gender of these defendants."

"The accused may, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled or ought not to be put upon him. The court shall determine the sufficiency of the challenge at once. If sustained, a new panel shall be ordered; if not sustained, the selection of jurors shall proceed." OCGA § 15–12–162.

In a similar case, the defendant contended that "the rejection of his pretrial challenge to the array violated his constitutional rights and the principles of

13

fundamental fairness" because "the panel was comprised of too few persons of his race, gender, and age." *Kent v. State*, 245 Ga. App. 531 (538 SE2d 185) (2000). This Court held:

> [Appellant] misperceives the law. While traverse jury lists must consist of a representative and fair cross-section of the community to the fullest extent possible, the same is not true of an array. Provided that persons are not systematically excluded on the basis of race or other cognizable grouping, and provided that the jurors comprising a panel are randomly selected from a representative pool, the selection process is not inherently defective.

Id. at 531.

The defendant has the burden of proving purposeful discrimination in the jury array. *Pruitt v. State*, 279 Ga. 140, 142 (611 SE2d 47) (2005). Neither below nor on motion for new trial did Lynch point to any evidence that jurors were systematically excluded on the basis of race or other cognizable grouping, nor did he produce evidence that jurors comprising the panel were not randomly selected from a representative pool. There was no error.

Case Number A12A0978

1. In this case, Shammi Jadooram appeals. He raises two enumerations that were previously addressed; specifically, that the trial court erred in limiting voir dire,

14

and also erred in refusing to grant a mistrial following the prosecutor's "golden rule" argument made during closing. These arguments were addressed in Divisions 2 and 3 in Case Number A12A0976.

2. Next, Jadooram argues that the trial court erred in refusing his motion to sever his case from that of his co-defendants. He argues that there was no common scheme or plan and therefore his motion should have been granted.

As previously discussed in Case Number A12A0976, the crimes that were the basis of the trial in this case were two armed robberies of convenience stores, using masks and occurring just hours apart. As in that previous case, Jadooram does not show "clear prejudice" from the refusal to sever, but argues only that there was a substantial likelihood that the jury would confuse or misapply the evidence in a joint trial. See *Owen*, supra at 314. Accordingly, we conclude that the trial court did not err in denying the motion to sever.

3. Next, Jadooram contends that the trial court erred in denying his motion to suppress the gun and the mask found in a black bag under a neighbor's storage building and a dismantled shotgun broken into three pieces found in a drainage ditch in an overgrown area some 54 yards from Jadooram's residence. Jadooram points out

15

that the search warrant did not have his correct address listed on it and the trial court suppressed all evidence found at that address.[2]

The trial court did not, however, suppress the mask and gun found in the black bag or the shotgun found in the drainage ditch, concluding that Jadooram had no expectation of privacy in the neighbor's shed or in the drainage ditch. Further, the trial court properly held that nothing found in Jadooram's house pursuant to the invalid search warrant led officers to the bag or the gun, and therefore the items were not fruit of the poisonous tree.

Counsel argued that the search of the residence established that Jadooram "had at least some presence at that residence." But officers already knew that Jadooram lived there. Accordingly, Jadooram has not shown that the bag and gun were discovered as a result of any evidence found in the house and later suppressed. See *Leftwich v. State*, 299 Ga. App. 392, 394 (682 SE2d 614) (2009) (evidence is fruit of the poisonous tree only if it would not have been discovered but for the illegal police conduct).

---

[2] The affidavit did list the correct address, but due to a scrivener's error, the address was not listed on the search warrant.

Further, "[t]he burden is on the defendant to show that he has standing to contest the alleged violation, i.e., that he has a legitimate expectation of privacy." (Punctuation omitted.) *Johnson v. State*, 305 Ga. App. 635, 637-638 (700 SE2d 612) (2010). Jadooram could not show that he had any expectation of privacy in the neighbor's outbuilding, nor does he attempt to do so.

As to the gun found in the drainage ditch, "a defendant who abandons seized property lacks standing to challenge the validity of the search and seizure." *Johnson v. State*, 305 Ga. App. at 638. See also *Simmons v. State*, 164 Ga. App. 643, 644 (298 SE2d 313) (1982) (appellant had thrown the gun into a densely overgrown area behind his house and therefore "had no reasonable expectation of privacy in the area where he abandoned the gun").

4. In his last enumeration of error, Jadooram contends that trial counsel was ineffective for failing to object to the judge's conversation with the jury and the recharge of the jury outside his presence. Jadooram claims that counsel should have objected to the exchange and should have accepted the trial court's offer to recharge the jurors in the defendants' presence.

"[I]n order to prevail on his claim of ineffective assistance, [Jadooram] must show that his attorney's performance was deficient and that the deficient performance

so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of his trial would have been different; he also must overcome the strong presumption that his attorney's conduct fell within the broad range of reasonable professional conduct. *Smith v. State,* 282 Ga. 388 (651 SE2d 28) (2007), citing *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "This Court gives deference to the trial court's factual findings, which are to be upheld unless clearly erroneous, and reviews the lower court's legal conclusions de novo." *Sanford v. State*, 287 Ga. 351, 356 (695 SE2d 579) (2010).

A defendant has the constitutional right to be present "at any stage of a criminal proceeding that is critical to its outcome if (his or her) presence would contribute to the fairness of the procedure. A critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." *Huff v. State,* 274 Ga. 110, 111 (549 SE2d 370) (2001).

"In general, a trial judge should not communicate with the jury without all parties present in open court. The better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the

absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused." *Chandler v. State*, 277 Ga. App. 78, 80 (625 SE2d 495) (2005).

Trial counsel testified at the hearing on the motion for new trial that he did not object because the issue did not appear to be substantive or to be one that would affect the trial. He stated that it appeared to be more in the way of an emergency matter that involved security. Jadooram has not suggested that the recharge was incorrect nor has he shown that, had he been present or had counsel objected, the matter would have been dealt with differently. See *Chandler*, supra at 80. There was no error.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*