FINAL COPY
294 Ga. 431

S13A1903. JACKSON v. THE STATE.

MELTON, Justice.

Following a joint jury trial regarding two separate crimes committed on the same night, Martavious Jackson was found guilty of armed robbery, aggravated assault with a deadly weapon, aggravated battery, possession of a firearm during the commission of a felony, malice murder, felony murder, aggravated assault with a deadly weapon, and possession of a firearm by a convicted felon.[1] Jackson appeals, contending that he should not have been tried

---

[1] In Indictment 07SC62994, Jackson was indicted for armed robbery, criminal attempt to commit armed robbery, aggravated assault with a deadly weapon, aggravated assault, aggravated assault with intent to rob, aggravated battery, battery, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. In Indictment 08SC65707, Jackson was indicted for malice murder, felony murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following a consolidated jury trial ending on March 26, 2010, Jackson was found guilty of all crimes except criminal attempt to commit armed robbery, aggravated assault with a deadly weapon, aggravated assault with intent to rob, and battery under the first indictment. Thereafter, with regard to the first indictment, Jackson was sentenced to life imprisonment for armed robbery, twenty concurrent years for aggravated assault with a deadly weapon, twenty consecutive years for aggravated battery, and five consecutive years for each of two counts of possession of a firearm (one during the commission of a felony and one as a

for both crimes at the same trial, the jury array was improper, and the trial court failed to appropriately consider the possibility that Jackson was incompetent to stand trial. For the reasons set forth below, we affirm.

1. In the light most favorable to the verdict, the record shows that, at approximately 6:00 p.m. on November 21, 2007, Jackson and another man identified as "Skeet" broke into Cynthia Denson's apartment and began asking about her boyfriend, Latoron Scott. After placing a gun to Denson's head, Jackson and Skeet stole money and left Denson's apartment. At roughly the same time, Scott, who had been telephoned by Denson, was pulling into the parking lot of the apartment complex and saw Jackson, whom he had known for

convicted felon). With regard to the second indictment, Jackson was sentenced to a consecutive term of life imprisonment for murder, twenty concurrent years to the murder count for aggravated assault with a deadly weapon (for each of two counts), and five years concurrent with armed robbery for each of two counts of possession of a firearm (one during the commission of a felony and one as a convicted felon). The conviction for felony murder was vacated by operation of law. Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). Jackson filed a motion for new trial on March 30, 2010, which was amended on December 27, 2010 following the appointment of new counsel. The trial court denied the motion on March 26, 2012, and Jackson filed a timely notice of appeal. After the payment of costs on August 28, 2013, Jackson's case was docketed to the September 2013 term of this Court and submitted for decision on the briefs.

years, with Skeet. Jackson approached Scott's car, put a gun in his face, and ordered him to get out of the car. Scott tried to talk to Jackson, but was struck in the head. Scott's cousin, Antonio Collins, was also in the car and was ordered to get out of the car and onto the ground by Skeet. Collins, who also recognized Jackson, was then pistol-whipped in the head. A shot was fired at Collins, but missed. Scott tried to run away, but was shot in the leg as he was fleeing. He was then forced to give up his money as well as his shoes. Scott was taken to the hospital, and, while there, he told the police that Jackson shot him. Jackson was subsequently identified by Scott and Collins as being the perpetrator of the crimes.

A few hours later, between 2:00 and 3:00 a.m. on the following morning, Jarvis Phillips and Ronnie Houston were standing outside the 1738 Café, where they had performed earlier. Jackson, who was with another man, walked toward them with an assault rifle and started spraying shots. Houston was shot twice in the thigh, but survived. Phillips was killed. Jackson was identified by two witnesses. The shell casings from both the armed robbery at the apartment and from the murder outside the club were determined to have been fired from the same AK-47 assault rifle. Additional similar transaction evidence of a prior

robbery committed by Jackson was also admitted at trial.

This evidence was sufficient to enable the jury to find Jackson guilty of all of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781 61 LE2d 560) (1979).

2. Jackson contends that the trial court erred by granting a motion by the State to consolidate for a single trial the charges involving Denson and Scott with the charges involving Phillips and Houston. We disagree. "The trial of offenses may be joined when the offenses are based on the same conduct or constitute a series of acts connected together or when the acts constitute parts of a single scheme or plan. Dingler v. State, 233 Ga. 462 (211 SE2d 752) (1975)." Burrell v. State, 258 Ga. 841, 843 (2) (376 SE2d 184) (1989). In the related area of severance,  severance is not mandatory where crimes were committed as part of a continuing spree.  Davis v. State, 279 Ga. 11, 13 (3) (608 SE2d 628) (2005). In this case, the murder of Phillips was committed less than a mile from the armed robbery of Scott, and both occurred within a short period of time from one another. Both crimes involved aggravated assaults against multiple victims with an AK-47. Ballistics evidence showed the same gun was used in both crimes. Under these circumstances, the trial court did not err by

4

granting the state's motion for joinder. Id.

3. Jackson argues that the trial court erred by overruling his objection to the jury array, contending that the array was not comprised of a fair cross-section of the population of Fulton County. More specifically, Jackson contends that African-Americans were under-represented. This contention fails.

> While traverse jury lists must consist of a representative and fair cross-section of the community to the fullest extent possible, *the same is not true of an array*. Provided that persons are not systematically excluded on the basis of race or other cognizable grouping, and provided that the jurors comprising a panel are randomly selected from a representative pool, the selection process is not inherently defective. [Kent v. State, 245 Ga. App. 531 (538 SE2d 185) (2000).] The defendant has the burden of proving purposeful discrimination in the jury array. Pruitt v. State, 279 Ga. 140, 142 (611 SE2d 47) (2005).

(Punctuation omitted; emphasis supplied.) Fisher v. State, 317 Ga. App. 761, 768 (7) (732 SE2d 821) (2012). Because Jackson has presented no evidence of purposeful discrimination, his challenge to the array fails.

4. Jackson contends that the trial court erred by denying his motion for a continuance to evaluate his competency. "Denial of a motion for continuance is within the sound discretion of the trial court, and this Court will not interfere unless there was a clear abuse of discretion." (Citation omitted.) Simmons v.

5

State, 291 Ga. 705, 706 (2) (733 SE2d 280) (2012). There was no such abuse of discretion here.

The record shows that, prior to a hearing on the day before his trial, Jackson refused to come to court. At that time, the trial court called the prison, spoke to the medical director, and was informed that Jackson had received a "clean bill of mental health." Jackson was then brought to the courtroom, where the judge asked him about his situation. Jackson complained that he did not receive appropriate mental care in prison and that he had to eat his own feces in order to get any attention. Jackson did not exhibit any mental problems at the hearing, itself. At the beginning of trial the next morning, trial counsel requested a continuance to investigate Jackson's competence. The trial court denied the motion for a number of reasons. First, the trial court noted that, up until the day before trial, defense counsel had never had any reason to ask for a psychiatric evaluation. Second, the trial court spoke with the jail's medical director, who had examined Jackson and determined him to be in good mental health. Third, based on colloquy with Jackson about his odd behavior, the trial court determined that Jackson understood that eating his own feces was improper and had been knowingly done to trigger an evaluation. Finally, the trial court

6

determined that, based on Jackson's familiarity with the justice system, he might be attempting to delay trial. Based on all of these considerations, the trial court did not err in denying the motion for continuance. *Simmons*, 291 Ga. at 706 (2).

5. In a related argument, Jackson contends that the trial court erred by failing to conduct, sua sponte, an adequate investigation into his competency to stand trial. "[C]onstitutional guarantees require the trial court to inquire into competency, even where state procedures for raising competency are not followed, if evidence of incompetence comes to the court's attention." Baker v. State, 250 Ga. 187, 190 (297 SE2d 9) (1982). As discussed in the previous division, the trial court spoke to the medical director at the jail, Jackson's trial counsel, and Jackson, himself, before proceeding with trial. This enumeration is meritless.

Judgment affirmed. All the Justices concur.

Decided January 21, 2014.

Murder. Fulton Superior Court. Before Judge Markle.

Jennifer A. Trieshmann, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker,

Joshua D. Morrison, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.