305 Ga. 170
FINAL COPY

S18A1060. GRANT v. THE STATE.

PETERSON, Justice.

Varocus Grant appeals his convictions for malice murder and firearm possession during the commission of a felony in relation to the shooting death of Travis Shivers.[1] Grant argues that he was denied a fair trial because the jury array was selected in a manner inconsistent with the Sixth and Fourteenth Amendments of the United States Constitution and Georgia statutory law, that the trial court erred by denying a motion in limine to exclude an incriminating

---

[1] The crimes occurred on the night of October 1, 2011. On February 2, 2012, Grant was indicted for malice murder, felony murder, possession of a firearm by a convicted felon, aggravated assault, and possession of a firearm during the commission of a felony. At a trial in November 2012, where the possession of a firearm by a convicted felon charge was bifurcated, the jury acquitted Grant of possession of a firearm by a convicted felon and found him guilty of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. Grant was sentenced to life for malice murder and five years to run consecutively for firearm possession. The remaining charges were merged or vacated by operation of law. Grant timely filed a motion for new trial on December 23, 2012, which was amended by new appellate counsel on September 13, 2016. On July 20, 2017, the trial court held a hearing on the motion for new trial as amended and denied the same on August 31, 2017. Grant timely filed a notice of appeal on September 22, 2017. His appeal was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

statement by Grant, that the trial court erred by admitting testimony about fingerprint evidence, and that his trial counsel was ineffective for numerous reasons. We affirm.

The trial evidence viewed in the light most favorable to the verdicts showed that on the evening of October 1, 2011, Grant, along with an unknown man, attacked, shot, and killed Travis Shivers. A week prior to the shooting, Grant was witnessed speaking angrily to some male friends and was overheard saying, "I see that n****r, I'm going to do that n****r, I'm going to kill that n****r." On the night of the murder, various witnesses placed Grant and an unknown man near the Holsey Cobb Village apartments ("the Village"), where the shooting occurred. Grant was wearing a hat and a dark hooded sweatshirt, and appeared angry.

That night, Jasmine Paul (Shivers's cousin) and Kaleesha Ross heard gunshots coming from the Village. Ross fled toward the nearest store while Paul ran toward the Village. As Paul approached the scene of the crime, she recognized Shivers's voice calling out that he had been shot. Paul then saw Grant shoot Shivers several times while an unknown man continually pushed and kicked Shivers to the ground. Grant and the unidentified man fled the scene,

2

and Paul called for help.

The next morning, Grant voluntarily appeared at the police station, was informed of his rights, waived them, and agreed to talk to the police. During the interview, Grant's statements placed him at the scene of the crime. The night before, investigators recovered a can of Mountain Dew and a blue Dallas Cowboys hat near the victim. Grant acknowledged that he both lost a hat and dropped a can of Mountain Dew near the scene.

1. Although Grant does not expressly challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the trial evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Grant argues that he was denied a fair trial because the jury array was selected in a manner that deprived him of a fair cross-section of the community as required by the Sixth Amendment, Fourteenth Amendment,[2] and OCGA § 15-

---

[2] To the extent that Grant challenges the constitutionality of OCGA § 15-12-40.1, the argument is not preserved for appeal. We have consistently held that "[c]hallenges to the constitutionality of a statute 'must be made at the first opportunity, and it is too late to raise such [a] question after a guilty verdict has been returned by the jury.'" Kolokouris v. State, 271 Ga. 597, 597 (1) (523 SE2d 311) (1999). Below, Grant challenged the sufficiency of the

12-40.1.[3] We disagree.

To challenge the composition of a randomly selected jury array, a defendant must prove that "persons [were] . . . systematically excluded on the basis of race or other cognizable grouping[.]" Jackson v. State, 294 Ga. 431, 433 (3) (754 SE2d 322) (2014) ("While traverse jury lists must consist of a representative and fair cross-section of the community to the fullest extent possible, *the same is not true of an array*." (citation and punctuation omitted; emphasis in original)).

Here, Grant has failed to meet this burden because he fails to present any evidence of systematic or purposeful discrimination. To support his claim, Grant relies solely on the fact that the race of 111 of the 162 jurors of the array was marked as undetermined. Grant argues that this lack of information shows that the composition of the array amounted to "discrimination by random process," and that the State failed to show a fair cross-section. Grant misunderstands the

---

array but not the constitutionality of OCGA § 15-12-40.1. As such, this issue was waived for appeal and will not be considered here.

[3] In making his statutory claim, Appellant cites former OCGA § 15-12-40 in his brief. OCGA § 15-12-40 was no longer in effect at the time of Grant's November 2012 trial and does not apply to this case. It was displaced by OCGA § 15-12-40.1 on July 1, 2012. We analyze Appellant's claim as though he brought it under OCGA § 15-12-40.1.

burden of proof — he, not the State, bears the burden of proof on this issue. Jackson, 294 Ga. at 433. The lack of information upon which Grant relies proves nothing, and Grant cannot prevail.

3. Grant argues that the trial court erred in denying his motion in limine to exclude his statement, "I see that n****r, I'm going to do that n****r, I'm going to kill that n****r," because it was irrelevant and highly prejudicial. We disagree.

A motion in limine is a pretrial method of determining the admissibility of evidence and should be granted only if "there is no circumstance under which the evidence . . . is likely to be admissible at trial." Forsyth County v. Martin, 279 Ga. 215, 221 (3) (610 SE2d 512) (2005) (citation and punctuation omitted); see also United States v. Mitchell, 954 F2d 663, 665 (11th Cir. 1992). We review the denial of a motion in limine for abuse of discretion. State v. Wilkins, 302 Ga. 156, 160 (805 SE2d 868) (2017).

Grant argues that the statement was introduced solely to put his character at issue and lacked relevance. Below, the parties litigated the issue as a matter of motive. While it may be more properly introduced as evidence of intent, our old Evidence Code cases did not always delineate between motive and intent.

5

See, e.g., <u>Davis v. State</u>, 249 Ga. 309, 310-311 (1) (290 SE2d 273) (1982) (finding the same evidence as proof of motive and intent); <u>Brock v. State</u>, 254 Ga. 682, 683 (2) (333 SE2d 593) (1985) (same). Regardless, evidence of a defendant's motive or intent for a homicide is relevant. <u>Lindsey v. State</u>, 282 Ga. 447, 451 (3) (651 SE2d 66) (2007); see also, e.g., <u>Davis</u>, 249 Ga. at 311 (1); <u>Brock</u>, 254 Ga. at 683 (2). This is true even if it may "incidentally place the defendant's character in evidence[.]" <u>Goodman v. State</u>, 293 Ga. 80, 84 (3) (742 SE2d 719) (2013) (punctuation omitted) (quoting <u>Fulton v. State</u>, 278 Ga. 58, 60 (3) (597 SE2d 396) (2004)). Even if the statement put Grant's character at issue, the statement was clearly relevant.

Grant also argues that the statement was highly prejudicial because it was not temporally proximate to the shooting, its target was unclear, and there is no evidence it was relevant to the murder. Under the old Evidence Code, which applied to Grant's November 2012 trial, relevant evidence could be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" <u>Hicks v. State</u>, 256 Ga. 715, 720 (13) (352 SE2d 762) (1987) (punctuation omitted). Grant's statement is relevant, and it was particularly probative given that it was made scarcely a week before the shooting. The

6

decision to admit evidence is within the sound discretion of the trial court, and we find no abuse of discretion here.

4. Grant argues that the trial court erred in denying his motion for a mistrial when the State elicited Agent Bryan Smith's explanation of the Automated Fingerprint Identification System (AFIS) at trial. We disagree.

At trial, the State asked Agent Smith what happens in the course of an investigation when a fingerprint is found. He explained:

> [Y]ou can just take that fingerprint and enter it in the database against known people who have been arrested, it's called AFIS, which is the Automated Fingerprint Identification System. It's basically a database. There's one in Georgia and there's one that — there is one at the state level and one at the federal level. And it searches against that database. And if it matches someone, then the examiner will actually do a one-to-one comparison to confirm what the computer has matched. And then they say this print has been individualized.

(Punctuation omitted.) This statement was just a general explanation of what an officer would do in the course of his investigation when a fingerprint was found at the scene. Nothing in any of his testimony indicated to the jury that Grant had ever been convicted of a crime or was in the AFIS system.

Nonetheless, Grant objected to this testimony and moved for a mistrial, claiming that this improperly put his character at issue. He claimed the only

"logical inference" from the testimony was that he was included in that database and had a prior criminal history. The trial court disagreed with this characterization and denied the motion.

The decision of whether to grant a mistrial is within "the sound discretion of the trial court, and this Court will not disturb the ruling on appeal unless it resulted from a manifest abuse of that discretion." Dulcio v. State, 292 Ga. 645, 648 (2) (740 SE2d 574) (2013). Again, Agent Smith's testimony was merely a simple explanation of investigative procedure regarding fingerprints and never connected Grant to the AFIS system or a prior conviction. See, e.g., Lewis v. State, 287 Ga. 210, 212 (3) (695 SE2d 224) (2010) (asking witness, who the jury knew was in custody, whether he had spoken to defendant the previous day, did not necessarily imply that defendant was in custody); Carr v. State, 282 Ga. 698, 701-702 (3) (653 SE2d 472) (2007) (investigator's characterization of interview of defendant as "talking to someone who has been around a little while, so to speak, meaning educated or familiar with the system" did not indicate to jury that defendant had a criminal history). And no subsequent testimony connected Grant to the AFIS system. The trial court did not abuse its discretion in denying Grant's motion for a mistrial.

5. Grant asserts his trial counsel rendered constitutionally ineffective assistance for several reasons. We disagree.

To prevail on a claim of ineffective assistance of counsel, Grant must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. Strickland v. Washington, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, an appellant "must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable" way in the light of all of the circumstances and prevailing norms. Smith v. State, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). Counsel's actions, absent clear and convincing evidence to the contrary, are "presumed to be part of trial strategy." Flanigan v. State, 269 Ga. 160, 162 (2) (d) (496 SE2d 255) (1998) (citation and punctuation omitted). The strongest evidence of what trial counsel sought to do is the trial transcript itself. Pyatt v. State, 298 Ga. 742, 755 (6) (b) n.14 (784 SE2d 759) (2016).

To establish prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

9

proceeding would have been different." Strickland, 466 U. S. at 694. An appellant must satisfy both prongs of the Strickland test, and if one prong fails, "it is not incumbent upon this Court to examine the other prong." Smith, 296 Ga. at 733 (2) (citation and punctuation omitted). In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous. Id.

(a) Grant asserts that his trial counsel rendered ineffective assistance by making a frivolous motion, out of the presence of the jury, to admonish the prosecution for statements made during an objection, instead of seeking a curative instruction. During a heated exchange between trial counsel and the prosecution, the prosecutor objected to "counsel's continual colloquy, grandstanding, and filibustering." The trial court asked the parties to move on, but trial counsel asked to be heard on the matter at an appropriate time. The next day, out of the presence of the jury, trial counsel made a motion to admonish the prosecutor, saying, "I know that we have not concluded these proceedings, and that I certainly am not interested in us having another one of those types of exchanges in the presence of the jury," expressing concern for the effect it would have on his client. The trial court admonished both counsel for their

10

behavior.

Trial counsel's decision to seek admonishment outside the presence of the jury rather than a curative instruction was not deficient performance. The record reflects that both counsel were unprofessional in arguing before the court. Grant provides us with no reason to conclude that the jury would have been any more or less prejudiced against one side or the other on account of this behavior. The decision to address this issue outside the presence of the jury with the goal of avoiding future confrontations with the prosecution, which could have been harmful to Grant, was plainly within the scope of reasonable trial strategy.

(b) Grant next contends that trial counsel rendered ineffective assistance by allowing character evidence to be introduced against him when trial counsel failed to seek the redaction of a video played to the jury that referred to Grant's probation. At a pre-trial <u>Jackson-Denno</u> hearing, a portion of the video was played but trial counsel never objected to a reference to Grant's probation. In response to the State playing the same video at trial, trial counsel moved for a mistrial, claiming the reference to Grant's probation put Grant's character at issue. The trial court denied the motion.

Even assuming that trial counsel's failure to seek the redaction of the

video was deficient, there was no prejudice. In his own direct testimony, Grant used his probation as part of his defense, explaining that his probation (and the consequence for violating its terms) was a reason that he would not have been involved with someone planning to commit a crime. Given this, and the nature of the evidence against him, we cannot say that Grant was prejudiced. Grant cannot show ineffective assistance of counsel on this basis.

(c) Grant also asserts that trial counsel rendered ineffective assistance by allowing a portion of the same videotaped interview to be shown to the jury because it showed Grant invoke his Sixth Amendment right to counsel. During that portion of the interview, Grant states that he would "get a lawyer or something." The officers interviewing him immediately stopped to determine whether he wanted counsel, and he confirmed that he wanted to continue talking with the officers and did so at length. Before trial, counsel had sought to have that portion of the interview suppressed, but the court held that Grant's passing reference to a lawyer was not a valid invocation of his rights. At trial, after the section of video discussed above in Division 5 (b) was played but prior to playing the portion of the video that contained this alleged invocation, trial counsel objected again. The State offered not to play the remainder of the video.

12

The trial court gave counsel the option to withdraw its objection and allow the video to be played or accept the State's offer not to play the remainder of the video. Trial counsel was granted a recess to discuss the options with Grant. After consulting with Grant, trial counsel said he believed it was best that the jury hear the whole interview rather than cut it off in the middle when the jury expected to hear the whole thing and so chose to withdraw the objection and have the State play the second half of the video interview. We cannot say that this decision was unreasonable trial strategy, especially given the equivocal nature of his reference to a lawyer and his continued cooperation with police.

(d) Grant also claims that trial counsel rendered ineffective assistance by failing to object to hearsay. The State asked Agent Terry Howard what differed between Grant's statements to him and what his investigation otherwise found. Agent Howard explained, among other things, that he "had talked to witnesses that had placed a gun in [Grant's] hand." Grant claims trial counsel was ineffective for failing to object to this statement.

Even assuming trial counsel's failure to object was deficient, there was no prejudice. Eyewitnesses placed Grant at the scene of the crime, and one saw Grant with a gun shooting Shivers. Grant admitted to being present at the scene

of the crime and that he lost items at the scene that matched items recovered next to the murdered victim. Given this evidence, Grant cannot show that Agent Howard's isolated statement — given in the context of a lengthy examination — likely affected the outcome of his trial. Therefore, there was no prejudice from trial counsel's failure to object to Agent Howard's testimony.

(e) Grant next argues that trial counsel rendered ineffective assistance by eliciting testimony from Agent Howard that amounted to improper witness-bolstering of Jasmine Paul. Improper bolstering occurs when a witness directly testifies as to the trustworthiness or credibility of another witness. See former OCGA § 24-9-80 ("The credibility of a witness is a matter to be determined by the jury under proper instructions from the court."); Brown v. State, 302 Ga. 454, 460-461 (2) (b) (807 SE2d 369) (2017).[4] When evaluating whether testimony constitutes improper bolstering, "we consider the disputed testimony

---

[4] Although Brown is a new Evidence Code case and relies upon OCGA § 24-6-620, former OCGA § 24-9-80 was carried forward with only minor revisions in the new Evidence Code, and there is no materially identical Federal Rule of Evidence on this matter. See Scudder v. State, 298 Ga. 438, 440 (3) n.3 (782 SE2d 638) (2016). As such, our precedent interpreting OCGA § 24-9-80 still applies in interpreting OCGA § 24-6-620. See State v. Almanza, 304 Ga. 553, 557 (2) (820 SE2d 1) (2018) ("If there is no materially identical Federal Rule of Evidence and a provision of the old Evidence Code was retained in the new Code, our case law interpreting the former provision applies."). Thus, because Brown is essentially interpreting the same provision, Brown's reasoning is applicable here.

14

in context." Brown, 302 Ga. at 461 (2) (b). Grant has not shown deficient performance in this regard.

One alleged instance of bolstering was not even testimony — it was an objection by the prosecutor to hearsay statements. The remaining purported instances of witness-bolstering involved Agent Howard's reliance on Paul's statements during his investigation. In each case, Agent Howard repeated what he remembered Paul saying, and at one point, he said he "was concerned about . . . the truth and that was from [Paul]."

Based on the record below, it appears as if trial counsel may have sought to undermine Agent Howard's reliance on Paul's testimony. Grant offers nothing that rebuts the presumption that this was reasonable trial strategy; the mere fact that it did not succeed is not enough. See Green v. State, 281 Ga. 322, 323-324 (2) (638 SE2d 288) (2006) ("Although the tactic may have been ineffective, we perceive trial counsel's attempt to undermine the testimony of the State's witness as a matter of reasonable strategy.").

(f) Grant next asserts that trial counsel rendered ineffective assistance by not making a proper motion regarding alleged hand signs exchanged between the jury and the prosecutor. This is simply a mischaracterization of the record;

trial counsel made the very motion Grant claims he should have made. At trial, counsel alleged that inappropriate hand signals and noises were being exchanged between the prosecutor and the jury. Trial counsel said he would like to "make a motion and it pertains to what I consider a breach of the code of ethics on the part of [the State]." He clarified:

> Then I would like to make clear the purpose of this motion. The purpose of this motion is to declare a mistrial based upon inappropriate behavior, conduct that is most damaging to my client's right to a fair trial.

Although the trial court denied this motion, trial counsel asked for the court to instruct the jury to ignore such behavior, which it subsequently did. Trial counsel did exactly what Grant now claims he should have done: make a motion and seek a mistrial. Given this, Grant cannot now claim his counsel was constitutionally ineffective.

(g) Grant argues that trial counsel rendered ineffective assistance by allowing a witness to testify to the ultimate issue in the case. Trial counsel asked Agent Bryan Smith whether he, based on his knowledge of the crime scene, was in a position to say Grant shot anyone. Even if the challenged testimony actually went to the ultimate issue in the case, Grant failed to prove trial counsel acted

unreasonably. Sometimes it may be reasonable trial strategy to allow testimony on the ultimate issue in the case. See Pyatt, 298 Ga. at 755  (6) (b) n.14 (noting circumstances where it might be reasonable to forgo an objection to a line of questioning that elicited an opinion about the ultimate issue). Here, it appears as if the line of questioning was part of trial counsel's attempt to weaken the State's case by impugning the State's ability to connect Grant's presence at the scene with the murder of the victim, eventually eliciting from Agent Smith testimony that he was not able to connect Grant to the shooting of Mr. Shivers based solely on the crime scene evidence. This was not unreasonable trial strategy,  and thus was not deficient performance.

(h) Finally, Grant claims he was prejudiced individually and collectively by the above ineffectiveness of counsel, errors of the trial court, and circumstantial evidence against him. We disagree.

The effect of prejudice resulting from counsel's deficient performance is viewed cumulatively. Schofield v. Holsey, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2007) ("[I]t is the prejudice arising from 'counsel's errors' that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum."). For the reasons stated above in Divisions 5 (a), (c),

17

(e), (f), and (g), however, Grant has failed to show deficiency in his counsel's performance. Smith, 296 Ga. at 733 (2) (a failure to satisfy either prong is "sufficient to defeat a claim of ineffective assistance" (citation and punctuation omitted)). The cumulative prejudice from any assumed deficiencies discussed in Division 5 (b) and (d) is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies. Thus, Grant has failed to meet his burden under the Strickland test.

As for Grant's remaining claim that he was prejudiced by the combined errors of the trial court and circumstantial evidence against him, this State does not recognize the cumulative error rule in that context, and we will not apply it here. Holsey, 281 Ga. at 812 (II) n.1 ("Although the combined effects of trial counsel's errors should be considered together as one issue, it remains the case that this State does not recognize the cumulative error rule." (citation and punctuation omitted)).

Judgment affirmed. All the Justices concur, except Blackwell, J., who concurs in judgment only in Division 3.

Decided February 18, 2019.

Murder. Crisp Superior Court. Before Judge Chasteen.

Derek M. Wright, for appellant.

Bradford L. Rigby, District Attorney, Kevin E. Hutto, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.