**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 15, 2017**

# In the Court of Appeals of Georgia

A17A0611; A17A0783. JOHNSON v. THE STATE.

MILLER, Presiding Judge.

After Joshua Johnson was indicted for armed robbery (OCGA § 16-8-41), aggravated assault (OCGA § 16-5-21), and misdemeanor obstruction of a law enforcement officer (OCGA § 16-10-24), defense counsel requested an evaluation of Johnson's competency. The trial court ordered a psychological evaluation, held a hearing as required by *Sell v. United States*, 539 U. S. 166 (123 SCt 2174, 156 LE2d 197) (2003), and ordered Johnson be involuntarily medicated in order to make him competent to stand trial. Johnson now appeals, arguing that the trial court failed to follow the test under *Sell*. For the reasons that follow, we agree and vacate the trial court's order and remand the case for further proceedings.

In *Sell*,

the Supreme Court of the United States established a four-part test for determining the rare instances when it is constitutionally permissible to involuntarily medicate a mentally ill criminal defendant for the sole purpose of making him competent to stand trial.

(Citations and punctuation omitted.) *Warren v. State*, 297 Ga. 810, 812 (1) (778 SE2d 749) (2015).

[T]he first part of the [*Sell*] test generally presents a legal question and thus should be reviewed de novo on appeal, while the remaining three parts present primarily factual questions and thus should be reviewed only for clear error by the trial court.

(Citations and footnote omitted.) Id.

So viewed, the evidence shows that Johnson was indicted in October 2015. On February 1, 2016, at the request of defense counsel, the trial court ordered the Georgia Department of Behavioral Health and Developmental Disabilities ("Department of Behavioral Health") to conduct an evaluation of Johnson's competency to stand trial as well as his criminal responsibility at the time of the alleged acts.

A psychiatrist, Deepti Vats, interviewed Johnson in February 2016 and determined that Johnson is incompetent to stand trial. Notably, Dr. Vats reported that when Johnson was first brought into the jail he had "slurred and scarce speech with a tangential thought process. He responded by giving inappropriate answers and making inappropriate expressions. [H]e had a history of being on medications, but was not currently prescribed any medications."

Dr. Vats diagnosed Johnson with schizophrenia spectrum and other psychotic disorders, and he reported that Johnson had taken the anti-psychotic medications Haldol and Risperdal in the past. Dr. Vats also reported that Johnson has delusions of grandeur and symptoms of mental illness characterized by his delusions; his symptoms seriously impair his competency to stand trial; and he lacks the ability to assist his attorney because he cannot provide an accounting of his actions with respect to the charged crimes. Dr. Vats concluded that, "to a reasonable degree of medical certainty," Johnson is not competent to stand trial. Dr. Vats also found that nothing during the interview suggested that Johnson was malingering or faking either incompetence or insanity.

More than six months after Dr. Vats determined that Johnson was incompetent to stand trial, the trial court held the *Sell* hearing at issue in this case. At the hearing,

3

the State presented the testimony of two witnesses, Psychologist Amy Gambow and Psychiatrist Kelly Coffman Neither Dr. Vats nor Dr. Koster testified at the *Sell* Hearing.[1]

Dr. Gambow is a post-doctoral fellow in clinical psychology. Although Dr. Gambow is not yet Board Certified or licensed to practice as a psychologist in Georgia, the trial court allowed her to testify as an expert over defense counsel's objection. Dr. Gambow testified that she works for the psychiatry and law service, which runs the "in-jail restoration program within the Fulton County jail" (hereinafter the "Program"), and she provides clinical services to inmates, like Johnson, who are found incompetent to stand trial.

Dr. Gambow first met with and examined Johnson beginning in March 2016, she reviewed his medical records from the jail, and she determined that Johnson was a good candidate for the Program. Johnson entered the Program on April 27, 2016, and participated in group sessions for the first two days, however, Johnson refused to participate in the Program after that time, so he was transferred out of the Program on June 1, 2016. Johnson refused to take any antipsychotic medications through this

---

[1] According to the trial court's order in this case, another psychiatrist, Felicitas Koster, also evaluated Johnson and determined that he is not competent to stand trial. Dr. Koster's full report is not part of the record on appeal.

time. Dr. Gambow testified that Johnson is schizophrenic, but she could not answer the State's question regarding the type of medication Johnson should be given because medication is not her area of expertise.

Dr. Coffman, the only other witness who testified at the *Sell* hearing, is a Board certified psychiatrist and assistant professor at Emory University, specializing in forensic psychiatry. Dr. Coffman serves as the medical director of the Program, she performs court-ordered evaluations for Fulton County, and she supervises the forensic psychiatry fellows in their medical treatment of inmates in the Program.

While Johnson was in the Program, Dr. Coffman periodically and briefly checked-in with Johnson. Dr. Coffman also met with Johnson for about 25 minutes on September 15, just a few days before the *Sell* hearing. Prior to that meeting, Dr. Coffman had not seen Johnson in "quite some time." Dr. Coffman testified that Johnson is schizophrenic, he is not competent to stand trial, and he will not become competent to stand trial without medication.

Dr. Coffman opined that antipsychotic drugs would likely improve Johnson's symptoms. Nevertheless, Dr. Coffman testified that Johnson has not taken any medication for at least a year, and Dr. Coffman admitted that she did not know whether Johnson has done well on medication in the past or what medications he had

previously taken because Johnson did not give the doctors in the Program permission to look at his hospital records. Dr. Coffman also admitted that without Johnson's medication history there was no way to know whether Johnson was at risk of having any side effects, and that the administration of antipsychotic medications could not be justified on any grounds other than competency.

Although Dr. Coffman testified that there are several medications used to treat schizophrenia, she did not provide any testimony regarding a proposed treatment plan for Johnson, such as the proper dosages of these medicines, how long each medications should be tried, what should be done if Johnson developed side effects from any of the medications, or whether certain medications are medically appropriate for Johnson.

Following the *Sell* hearing, the trial court entered an order (hereinafter the "First Order") in which it found that Johnson is not competent to stand trial and ordered that he be involuntarily medicated. In its order, the trial court adopted an unsigned and unauthenticated two-page "Proposed Treatment Plan" which is not otherwise a part of the record on appeal and was not admitted at the *Sell* hearing.[2]

---

[2] The trial court noted in its order that the Proposed Treatment Plan was prepared by a doctor, Dr. Koster The record shows that Dr. Koster was a fellow in the Program, however, Dr. Koster did not testify at the *Sell* hearing, and no evidence was

6

Johnson filed an appeal of the First Order, which forms the basis of the appeal in Case No. A17A0611. He also sought an emergency stay of that order, which this Court granted. Thereafter, upon the State's motion, and without holding a new hearing, the trial court entered a revised order (hereinafter the "Revised Order"), providing that Johnson be forcibly medicated to restore his competency for trial.[3] Johnson's appeal from the Revised Order forms the basis of the appeal in Case No. A17A0783.

Upon a thorough review of the limited record in both of these appeals, we find that the Revised Order is wholly insufficient under *Sell* to support the trial court's conclusion that Johnson can be involuntary medicated for the sole purpose of making him mentally competent to stand trial.

In Case No. A17A0783, Johnson argues that the trial court failed to follow the four-part *Sell* test in its Revised Order when it ordered that he be forcibly medicated

admitted at the hearing regarding her credentials.

[3] Johnson's argument that the trial court lacked jurisdiction to enter the Revised Order is meritless. The trial court maintains jurisdiction over the injunctive relief granted to the State, including any modification or stay of that relief. See *Warren*, 297 Ga. at 833 (3) (b) ("either the government or the defendant may move to revise the court's *Sell* order if circumstances change during a defendant's treatment"); OCGA § 5-6-45 (a) (notice of appeal acts as supersedeas only in criminal cases "where a sentence of death has been imposed or where the defendant is admitted to bail").

7

to restore his competency for trial.[4] We agree because the Revised Order is insufficient to justify Johnson's involuntary medication for the sole purpose of making him mentally competent to stand trial.

> An individual has a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs. The interference is particularly severe when, as in this case, the medication in question is an antipsychotic, for the use of such medications threatens an individual's mental, as well as physical, integrity. On the physical side, there is the violence inherent in forcible medication, compounded when it comes to antipsychotics by the possibility of serious, even fatal, side effects. But it is the invasion into a person's mental state that truly distinguishes antipsychotics, a class of medications expressly intended to alter the will and the mind of the subject.

---

[4] Johnson also contends that the trial court erred by holding a *Sell* hearing to determine whether he should be forcibly medicated without Johnson having first been declared incompetent to stand trial. We reject this contention, even though Johnson has apparently not yet entered a plea of incompetency, "[c]onstitutional guarantees require the trial court to inquire into competency . . . if evidence of incompetence comes to the court's attention." (Citation and punctuation omitted.) *Jackson v. State*, 294 Ga. 431, 434 (5) (754 SE2d 322) (2014). In this case, the limited record on appeal does not show what behavior Johnson engaged in that caused defense counsel and the trial court to inquire into his competency.

(Citations and punctuation omitted.) *Warren*, supra, 297 Ga. at 830 (3) (b). Consequently, before the State can obtain an order to involuntarily medicate a defendant,

> the State must demonstrate the following: (1) important governmental interests are at stake; (2) involuntary medication will significantly further those governmental interests; (3) involuntary medication is necessary to further those governmental interests; and (4) the administration of the drugs to be used is medically appropriate for the defendant.

(Citation omitted.) Id. at 812 (1).

> With regard to the first element of the *Sell* test,

> the Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In addition the Government has a substantial interest in timely prosecution and a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one.

(Citation and punctuation omitted.) *Warren*, supra, 297 Ga. at 826 (3) (a). With regard to the second element of the test, the trial court

> must find that administration of the drugs is *substantially likely* to render the defendant competent to stand trial and, at the same time, that

9

administration of the drugs is *substantially unlikely* to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair.

(Citation and punctuation omitted; emphasis supplied.) Id. at 828 (3) (b).

The third part of the *Sell* test requires the trial court to conclude that involuntary medication is necessary to further the governmental interests in proceeding with the defendant's prosecution. To reach this conclusion, the court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results, and the court also must consider less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power, before considering more intrusive methods.

((Citation and punctuation omitted.) *Warren*, supra, 297 Ga. at 833-834 (3) (c).

"The fourth and final part of the *Sell* test requires the trial court to conclude that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." (Citation and punctuation omitted.) Id. at 837 (3) (d).

Here, the record shows that the State has fundamentally failed to meet its burden under the four-part *Sell* test. *Warren*, supra, 297 Ga. at 812 (1). Moreover, the

10

trial court's Revised Order again fails to properly evaluate the four factors necessary to overcome Johnson's constitutionally protected liberty interest.

Notably, the record merely shows that Johnson is schizophrenic, and he has reportedly taken the anti-psychotic medications Haldol and Risperdal in the past. The record contains no evidence regarding the proposed medications and dosages recommended to restore Johnson's competency, other than the unsigned and unauthenticated appendix to the Revised Order, which was apparently prepared by a fellow in the Program who did not testify at the *Sell* hearing. See *Warren*, supra, 297 Ga. at 828 (3) (b). Moreover, the Proposed Treatment Plan does not set forth the duration for which the specified medications would be tried, except to state that the proposed protocol will be enforced involuntarily at 90 day intervals. Finally, there is no evidence or testimony in the record that the administration of specific medications is medically appropriate for Johnson or linking specific possible side effects to specific medications. See *Warren*, supra, 297 Ga. at 828 (3) (b).

We therefore conclude that the Revised Order in Case No. A17A0783 is legally insufficient to justify Johnson's involuntary medication for the sole purpose of making him mentally competent to stand trial. *Warren*, supra, 297 Ga. at 838 (4). Consequently, we vacate the trial court's Revised Order and remand the case for

11

further proceedings consistent with this opinion, including a new *Sell* hearing if the State elects on remand to pursue its motion for involuntary medication. See id. In A17A0611, we dismiss the appeal as moot.[5]

*Judgment vacated and case remanded in A17A0783. Appeal dismissed as moot in A17A0611. Doyle, C. J., and Reese, J., concur.*

---

[5] In light of our holding that the Revised Order is insufficient to justify Johnson's involuntary medication, we need not address his remaining enumerations of error.

12